## MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH *v.* BARTOW INVESTMENT COMPANY.

Under the evidence contained in the agreed statement of facts, tending to show that the public authorities had never expressly or impliedly accepted the dedication of certain streets surveyed in the subdivision of a tract of land, and that if any easement of way in the platted streets now in controversy ever existed in the purchasers of lots in another division of such tract, there had been an abandonment or forfeiture by non-user, there was no error in granting an interlocutory injunction, restraining the municipal authorities from opening streets or parts of streets through the land occupied by the plaintiff.

DECEMBER 13, 1911.

Injunction. Before Judge Charlton. Chatham superior court. August 24, 1911.

In 1866 Barrington King died seized and possessed of a tract of land containing about fifty acres, located in Chatham county, and at that time some distance from the corporate limits of the City of Savannah. In order to make a division among his heirs, the northern part of the tract was divided into nine portions of nearly equal size, numbered from the north toward the south, and with streets between the alternate tracts for the general benefit. Lot six came into the possession of the plaintiff in 1891 under a chain of conveyances; and lots seven, eight, and nine came into

their possession under a chain of conveyances in 1889. The conveyance of lots eight and nine made no mention of a street. From 1889 to 1898 lots seven, eight, and nine were used as pasture lands; and six, seven, eight, and nine were under fence from 1891 to ·1903, and were cultivated from time to time. From 1903 to 1909 the land was not under fence, except for parts of the old fence remaining. The fence enclosed the streets which had been surveyed in the original plat, and included those now in controversy. What is called Nephew street was not laid out in the original survey. Its status will be seen from the opinion of the judge of the superior court. Neither the County of Chatham prior to 1901, nor the City of Savannah since 1901, has done any work of any kind on the streets in controversy, nor has either of them done any act of acceptance in reference to such streets or any part thereof, or exercised any control over them. In December, 1901, the corporate limits of the City of Savannah were extended so as to include these lots. The lot lying northward from this property and numbered five in the subdivision was divided into smaller lots and sold. Two of these smaller lots, fronting on the north side of Nephew street, passed to the City of Savannah in 1906, under a chain of conveyances from the original purchaser. In May, 1911, the plaintiff filed the present equitable petition, alleging that the City of Savannah claimed the right to open streets through the property which would occupy part of the streets surveyed in the original subdivision, asserting its right to such streets both by reason of its governmental control of streets, and also by reason of its purchase of the two small lots fronting on Nephew street. Upon the hearing of the application for an interlocutory injunction, an agreed statement of facts was made; and it was agreed that if the city, as representing the public or as an owner of the two small lots mentioned above, had no right to X, Y, or Z streets, or the land over which they were platted, or an easement therein, the injunction should be granted; otherwise refused. The presiding judge granted the interlocutory injunction, and in doing so filed an· opinion, which is published herewith as showing other facts in addition to those above·mentioned, and also the grounds on which he based his action. The defendant excepted.˙ This opinion is as follows:

"After a careful study of the pleadings, evidence, and authori-

·ties submitted, I have concluded, that, notwithstanding the varied contentions made and the hopeless conflict of decisions by the courts of other States, the statutes of Georgia and the adjudications of our Supreme Court are decisive of all the issues made. To enter into a minute consideration of all of these questions would result in the necessary production of an opinion more formidable in extent than all of the record combined. Strictly speaking, there is no such thing as a dedication without an acceptance. No individual can force upon a resisting or reluctant public the existence of a street. There must be the intention to give plus the intention to receive. Once these have been manifested by writing, by acts, by conduct, the dedication is complete. Even then it can be abandoned or forfeited by non-user,—an implied forfeiture if the non-user has persisted a time long enough to force that conclusion. One can not abandon what he has never taken, although he may forfeit an easement by failure to use it which he could have enjoyed had he once used it. To say that a dedication is irrevocable, without more, is misleading. A dedication accepted is irrevocable, so far as the dedicator is concerned. But a dedicatory act on the part of an owner of land, unaccepted, is not a complete dedication, and is not irrevocable. Leaving out for the moment X or Nephew street, whichever it may be called, the streets dedicated, so far as the owner was concerned, south of the dividing line between sections 5 and 6, and known on the map or plat as Y and Z, have never been accepted by any authority. From the dedicatory act thirty-nine years ago until the present year, when ·occurred the demonstration on the part of the defendant which resulted in this proceeding, no public authority, no member of the public, no lot-owner has so much as expressed a desire to walk on Y or Z streets. They have figured in several deeds as boundary streets, but since 1891, a period of twenty years, the entire tract from the center of Nephew street to the southern boundary of No. 9, has been in one ownership, treated as an entire tract, no reference made to streets, and no use or attempted use of streets by any one or any authority. The City of Savannah never had any original right to Y and Z. What right it may have as a municipality it gets as successor to the public of 1872, at which date Savannah was a mile or more away from the tract. It has accepted the dedication of certain streets in the section north of No. 6, and some it has ignored, but it not only

never accepted these, in the southern part, but studiously avoided doing so. It is fair to assume from the evidence submitted that if the courts were to declare that Y and Z were dedicated streets of the City of Savannah, that municipality would abandon them so speedily as it could. With the extension of the city limits south, its plan has been projected over this tract, and the neighboring holdings to the east. Across Bull street (formerly the White Bluff· road) Forty-ninth and Fiftieth streets have been opened, The ·tract involved here is on the western side of Bull street. Forty-ninth projected, according to the city map published in 1910, would be coincident with Y street for only about ten or fifteen feet, whilst Fiftieth street would touch Z street at no point; and the remarkable spectacle would result, if both Fiftieth and Z are to be opened, of two streets of equal width running parallel within a dozen feet of each other. Evidently the defendant has also in contemplation the opening of Barnard street from north to south; and its crossings at X. Y. Z (upon the theory that these are streets) would save condemnation of that much land, although in the dedicatory plan there is no provision for north and south streets. But it is urged, even if this be sound doctrine as to Y and Z, it can not apply to X, or Nephew street, a forty-foot street, dedicated on December 13th, 1873, by the separate owners of 5 and 6, in a joint instrument, to the perpetual use of the public, twenty feet from each section. If there had been any acceptance of this dedication, under the authorities it would seem that the entire forty feet would have become a way, even if the acceptance of it was delayed, not unreasonably. It is to be noted that, whilst the street is named as forty feet, the dedicators are distinct. The owner of No. 5 had no right to dedicate the twenty feet from No. 6, nor the owner of the latter that from No. 5. So it was entirely within the power of the public to accept the northern or southern half of the dedicated street and ignore the remainder, whether such acceptance was evidenced by express action or user. In this instance there was no express acceptance. The public to a necessarily limited extent used the northern half of Nephew street, or that appurtenant to No. 5; but the evidence does not disclose that, in all of the thirty-eight years intervening, a single member of the public ever used the No. 6 half, or so much as desired to do so. On the contrary, it was for a long while under fence, under cultivation,

and a ditch several feet wide cut it off from the northern portion of the street. Whilst it is referred to as a boundary in deeds from the owner of No. 5, the boundaries in the deeds from the owners of No. 6 give the southern line of No. 5 as the northern boundary of No. 6. Moreover, more suggestive than deeds or even fencing or ditches is the fact that over half of said street appurtenant to No. 6 is a growth of trees, from twelve to twenty years of age and of considerable dimensions, absolutely precluding the use of the land as a street. On the map of 1910 it is coincident with no street to the east, and on the west the fenced right of way of the railroad makes it a cul de sac. As the public have never used nor shown the slightest desire to use the southern half of this street, I must conclude—the evidence being rather stronger than weaker in regard to non-user, if there can be a difference, than in the case of Y and Z,—that it never became a street, and so far as the public or its present representative, the defendant, is concerned, no street or way exists as to such southern half.

"Does the lot-owner in any of the sections north of No. 5 stand in a better attitude than the municipality? The City of Savannah bought lots 15 and 16 of section 5, in 1906. Why it purchased them, save to become a lot-owner in that particular place does not appear. But it is here as one, and whatever rights other lot-owners have it should enjoy. If an owner plats his holdings into lots and streets and sells with reference to such map, he is bound, so far as the purchaser of a lot is concerned, to the street platted, even though it would be a cul de sac and actually existed only on paper. Even in that event, the doctrine of abandonment and forfeiture from non-user would apply. Under the evidence in this case, if there ever was a street to the south of the southern line of No. 5, it has never been used, has been in a condition of non-user for thirty-eight years, is not in a condition to be used as a street, but has persistently been used for antagonistic purposes, such as cultivation, the growth of trees, and the like. The intervening ditch, ten [two] feet wide and four feet deep, was itself notice of adverse occupation. During all that time there has been no recognition by the owners of No. 6 of the lot-owner's easement, no lots sold from the sections south of the dividing line between 5 and 6, no act following up the projected dedication of the street. This is not precisely the case discussed in the authorities of other States. There

was no contract between the owners of individual lots in No. 5 and the owner of No. 6 as a tract; no consideration passed. It is stretching precedent to the breaking point to hold that because two owners of separate tracts thirty years ago undertook to dedicate a street to the public, which the public has never accepted, therefore a lot-owner in No. 5 can hold No. 6 to a bargain with a third party, after a period of acquiescence in the adverse acts of the owner extending over one prescriptive period, and nearly three times that of another. Whilst prescription does not run against the municipality as representing the State, it does run against the Mayor and Aldermen of Savannah as a lot-owner. What has been written with X or Nephew street in view applies with still more force to Y and Z, so far as the lot-owners in 5, 3, 2, and 1 are concerned, there being none in 4. As to the two streets last named, there has been no acceptance, no user; the use has been persistently adverse; and the possession for twenty years has been under the rule of unity, and the unused or abandoned street is extinguished - and reverts to the owner of the abutting land.

"The Georgia authorities relied upon are: Code, §§ 4171, 3644; *Parsons* v. *Trustees*, 44 *Ga.* 529; *Windham* v. *McGuire*, 51 *Ga.* 578 (3); *Bayard* v. *Hargrove*, 45 *Ga.* 342; *Harrison* v. *Augusta Factory*, 73 *Ga.* 448; *Ford* v. *Harris*, 95 *Ga.* 100 [22 S. E. 144]; *Georgia Railroad Co.* v. *Atlanta*, 118 *Ga.* 489 [45 S. E. 256]; *Norrell* v. *Augusta etc.*, 116 *Ga.* 313 [42 S. E. 466, 59 L. R. A. 101]; *Kelsoe* v. *Oglethorpe*, 120 *Ga.* 951 [48 S. E. 366, 102 Am. St. R. 138]; *McElwaney* v. *MacDiarmid*, 131 *Ga.* 98 (2) [62 S. E. 20]."

*H. E. Wilson* and *David C. Barrow,* for plaintiff in error.
*Edward S. Elliott,* contra.

LUMPKIN, J. (After stating the foregoing facts.) The Mayor and Aldermen of the City of Savannah claimed that it had a right to open certain streets through a tract of land held by the Bartow Investment Company. The latter filed an equitable petition to enjoin the municipal authorities from doing so. An interlocutory injunction was granted, and the defendant excepted. The city claimed the right to utilize certain parts of the land as streets, first, as a representative of the public; and second, on the ground that it was entitled to an easement in certain streets which had been plat-

ted in a former division of the land, because it had purchased two small lots lying in another part of the tract originally divided.

In this court counsel discussed with much ability and citation of authority the conflicting views of different courts as to the right of a purchaser of a subdivision of a tract of land, under what is sometimes called the unity theory, and under the contrary theory; and also questions of dedication, acceptance, abandonment, and prescription. An examination of the opinion of the presiding judge, which is published in connection with the statement of facts, will show that he did not deal with the conflicting views of other courts, but confined himself to the law as announced in the code and in the decisions of this court; and held, that, under the evidence tending to show that there was no acceptance by the public, and touching abandonment or forfeiture of any easement of way arising by virtue of purchasing in reference to a plat, an injunction should be granted. It is declared by the Civil Code (1910), § 3644, that "An easement may be lost by abandonment, or forfeited by nonuser, if the abandonment or non-user continue for a term sufficient to raise the presumption of release or abandonment." This has been held to apply to a municipal corporation as well as to an individual. *Kelsoe* v. *Town of Oglethorpe*, 120 *Ga.* 951 (48 S. E. 366, 102 Am. St. R. 138). Abandonment is a mixed question of law and fact. *Gaston* v. *Gainesville etc. R. Co.*, 120 *Ga.* 516 (48 S. E. 188).

Under the agreed statement of facts, there was ample evidence tending to show an absence of acceptance by the public authorities and an abandonment or forfeiture of any easement in owners of other lots, created by virtue of the original division of the land and the platting of streets, to authorize the grant of the interlocutory injunction. Whether such grant was erroneous is the only question before us; and we do not deem it proper to go further and to discuss the numerous and interesting questions of law which were argued by counsel for the respective parties, touching the question of the rights acquired by one who purchases a part of a subdivision of land under a plat. See, on the subject, *Ford* v. *Harris*, 95 *Ga.* 97 (22 S. E. 144); *Schreck* v. *Blun*, 131 *Ga.* 489 (62 S. E. 705).

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*