Controversy without action, heard upon the following agreed statement of facts:
"1. That both plaintiff and defendant are corporations organized and existing under the laws of the State of North Carolina, with their principal offices in Charlotte, N.C.
"2. That the defendant, the Myers Park Homes Company, hereinafter called the Homes Company for convenience, entered into a certain written contract with the plaintiff, the Stephens Company, to purchase from the latter a certain lot of land, hereinafter fully described, in the suburb of the city of Charlotte, known as Myers Park, a real estate development belonging to the Stephens Company, and paid a part of the purchase price therefor at the time of the execution of said contract, the balance being payable upon delivery of the deed to said lot, and that said lot is described as lot 6 or Block 11-A of Myers Park, according to revised map of said block, recorded in Book 230, at page 131, in the office of the Register of Deeds for Mecklenburg County, North Carolina.
"3. That the Stephens Company has tendered to the Homes Company a properly executed fee-simple deed, with the usual covenants of warranty, to said lot and has demanded the payment of the balance of the agreed purchase price, to wit, the sum of $1,305; and that the Homes Company has refused and still does refuse to accept said deed or to pay the balance of the purchase price on the ground that a portion of said lot has been dedicated to street purposes and is now subject to the easement thereof.
"4. That the facts with respect to the alleged dedication are as follows:
"(a) That Myers Park is a real, estate development adjacent to the city of Charlotte, comprising 1,100 acres or more of land; that when this development was first undertaken, a survey of the entire tract was made and general plans for the proposed development, which were to be subsequently worked out in detail, were prepared and embodied on a certain map hereinafter called `key map.'
"(b) That on account of the fact that the title to Myers Park property was derived from different sources, and that the property was composed of large tracts of farm lands, the boundaries of which were difficult to locate accurately, lawyers found the examination of titles and the preparation of abstracts of titles to property within this development exceedingly troublesome without some assistance. That solely for these reasons the said `key map,' on which notations were made showing the source of title of its various tracts thereon shown, was `recorded' on or about the first day of December, 1913, in the office of the Register of Deeds for Mecklenburg County, North Carolina, in Book 230, at page 241, for the convenience of attorneys, and also to outline the *Page 337 
general proposed scheme of the development, but absolutely without any intention whatever of making said map final or conclusive as to any details, the said key map, in fact, not containing sufficient information to locate or to furnish a correct description of any block, lot or street; and further, that the provisions of Gregory's 1913 Supplement to Revisal of 1905, Rev., sec. 263 (a), Acts 1911, ch. 55, and our registration laws in general were not complied with in `recording' said map, there having been neither the required proof upon oath by the surveyor nor the required probate.
"(c) That no sale or conveyance of property has ever been made by reference to said `key map,' but, on the contrary, all sales and conveyances have been made by reference to different details maps which are called subdivisional plats, and which are referred to specifically in all deeds conveying property in Myers Park.
"(d) That from time to time, as the Stephens Company undertook to sell lots in the various sections of Myers Park, the general plan was worked out and the detailed maps or subdivisional plats were prepared and recorded, showing one or more blocks, the streets adjacent thereto, the various lots in the blocks, and the exact dimensions of all such blocks, streets and lots.
"(e) That in all conveyances of property within Myers Park, lots have been described by lot and block numbers, as shown by certain of said subdivisional plats recorded in the office of the register of deeds, which were specifically referred to, and have usually been described also by metes and bounds. For example, the lot in controversy, in addition to the description by metes and bounds, is described as lot 6 of Block 11-A, according to revised map of said block recorded in Book 230, at page 131, in the office of the register of deeds, this map being a subdivisional plat.
"(f) That, not later than 1 September, 1913, a subdivisional map of Block 11-A was made and recorded in Book 230, at page 131, in the office of the register of deeds for Mecklenburg County, showing Boulevard A, now Morehead Avenue, as a curved street, of the width of 110 feet, but that said street was never physically designated, improved, opened or used as thus shown.
"(g) That thereafter, on or about 4 December, 1916, the said subdivisional plat of Block 11-A in the office of the register of deeds was revised, as shown on the plat thereof, said Boulevard A, now Morehead Avenue, being shown thereon as a straight street, of the width of 80 feet; and that after this revision was made, said street was laid out and paved, as shown on said revised plat, and has been used by the public as thus constructed since the spring of 1917. *Page 338 
"(h) That prior to the revision of said plat no lot was sold in Block 11-A or in any other block adjacent to Morehead Avenue, but that one or more lots in Block 11-A facing on Queen's Road were sold, all deeds therefor, however, containing the following provisions:
"`The foregoing property is conveyed subject to the following covenants, conditions, and restrictions, which the party of the second part, for himself, his heirs and assigns, hereby covenants and agrees to perform and abide by.
"`12. The Stephens Company, its successors or assigns, shall have the right to change, alter or close up any street or avenue shown upon said map not adjacent to the lot above described and not necessary to the full enjoyment by the party of the second part of the above described property, and shall retain the right and title to and control of all streets and avenues within the boundaries of Myers Park, subject, however, to the rights of the party of the second part for the purposes of ingress and egress necessary to the full enjoyment of the above described property.
"`13. It is expressly understood and agreed by the parties hereto that all of the foregoing covenants, conditions, and restrictions, which are for the protection and general welfare of the community, shall be covenants running with the land.'
"(i) That said Morehead Avenue, while convenient, is not necessary for the purpose of ingress and egress, nor for the full enjoyment of any of the lots in Block 11-A which were conveyed prior to the revision of said subdivisional plat; that Morehead Avenue, as revised, constructed, and now existing, serves all necessary or useful purposes, except that it is straight instead of curved and is somewhat narrower than before the said revision, and that it is wider than the average street in Myers Park and in the city of Charlotte.
"(j) That after the recordation of the original subdivisional plat of Block 11-A, and before the revision thereof, lots in other parts of Myers Park were sold, in the deeds to which the Stephens Company did not reserve the right to change, alter, or close up streets within Myers Park; that in none of said deeds was any reference made to the map of Block 11-A, nor, as stated, was only lot in Block 11-A so sold.
"(k) That Morehead Avenue, if constructed as shown on the original subdivisional plat of Block 11-A, would cover a portion of the front of lot No. 6 several feet in width at some points.
"5. That it has been agreed by the parties hereto that if, upon the foregoing facts, the court be of the opinion that said deed will convey to the defendant an indefeasible fee-simple title, free and clear from all easements of every nature, on account of the said original subdivisional plat of Block 11-A and the streets shown thereon, then and *Page 339 
in that event the plaintiff is entitled to and shall recover of the defendant the sum of $1,305, the balance of said purchase price, and all costs of this action; but that if the court be of the opinion that upon the said facts there has been a dedication of said street, as shown in original subdivisional plat, and that said lot is subject to the easement thereof, then the plaintiff shall recover nothing and shall be taxed with all costs:Provided, however, that either party may appeal to the Supreme Court of North Carolina from the decision of this case by the Superior Court. Wherefore, the parties of this proceeding pray the court that their relative rights under the facts hereinbefore set forth be determined and judgment rendered accordingly."
His Honor, being of opinion that the deed tendered by plaintiff was sufficient to convey a fee-simple title to the lot in question, free and clear of the alleged easement, rendered judgment in favor of the plaintiff in accordance with the agreement between the parties. Defendant appealed.
As a general rule, it may be said that the right to an easement in a public street or highway may be acquired by grant or dedication, by the exercise of the power of eminent domain, or by user for the requisite length of time. Sexton v. Elizabeth City, 169 N.C. 385. The principle involved in the instant case is one of dedication or equitable estoppel. Discussing the law applicable to this question, it was said in Wittson v.Dowling, 179 N.C. 542:
"It is the recognized principle here and elsewhere that when the owner of suburban property or other has the same platted, showing lots, parks, streets, alleys, etc., and sells off the lots or any of them, in reference to the plat, this, as between the parties, will constitute a dedication of the streets, etc., for public use, although not presently opened or accepted or used by the public," citing Elizabeth City v. Commander, 176 N.C. 26; Wheeler v. Construction Co., 170 N.C. 427; Green v. Miller,161 N.C. 25.
The same principle was declared in Green v. Miller, supra, with reasons therefor, as follows:
"Where the owner of real property lays out a town or village upon it, or even a plat of ground, and divides it into blocks or squares, and subdivides it into lots or sites for residences, which are intersected by streets, avenues, and alleys, and he sells and conveys any of the lots with reference to a plan or map made of the property, or where he sells or conveys according to a map of the city or town in which his land is *Page 340 
so laid off, he thereby dedicates the streets and alleys to the use of those who purchase the lots, and also to the public, under certain circumstances not necessary to be now and here stated. . . . The reason for the rule is that the grantor, by making such a conveyance of his property, induces the purchasers to believe that the streets and alleys, squares, courts, and parks will be kept open for their use and benefit, and having acted upon the faith of his implied representations, based upon his conduct in platting the land and selling accordingly, he is equitably estopped, as well in reference to the public as to his grantees, from denying the existence of the easement thus created."
This doctrine is founded upon principles of equity and fair dealing and has been stated and restated in so many decisions of this Court that it may be declared now as settled and no longer open for debate. Hughes v. Clark,134 N.C. 457; Davis v. Morris, 132 N.C. 435; Collins v. Land Co.,128 N.C. 563; Conrad v. Land Co., 126 N.C. 776; S. v. Fisher, 117 N.C. 733, and numerous cases of like import.
In Collins v. Land Co., supra, it was held "That a map or plat, referred to in a deed, becomes a part of the deed as if it were written therein, and that, therefore, the plan indicated on the plat is to be regarded as a unity, and the purchaser of a lot acquires the right to have all and each of the ways and streets on the plat or map kept open." In support of this position, the following was quoted with approval from Elliott on Roads, sec. 120:
"It is not only those who buy lands or lots abutting on a road or street laid out on a map or plat that have a right to insist upon the opening of a road or street, but where streets and roads are marked on a plat and lots are bought and sold with reference to the map or plat, all who buy with reference to the general plan or scheme disclosed by the plat or map acquire a right to all the public ways designated thereon and may enforce the dedication. The plan or scheme indicated on the map or plat is regarded as a unity, and it is presumed, as well it may be, that all the public ways add value to all lots embraced in the general plan or scheme. Certainly, as every one knows, lots with convenient cross streets are of more value than those without, and it is fair to presume that the original owner would not have donated land for public ways unless it gave value to the lots. So, too, it is just to presume that the purchasers paid the added value, and the donor ought not, therefore, to be permitted to take it from them by revoking part of his dedication."
The principles of law here involved have been clearly established, and they afford no cause for division of opinion. But the difficulty in the case at bar arises from an effort to apply the given facts to these settled principles. The defendant refuses to accept the deed tendered *Page 341 
by plaintiff, alleging that a portion of the lot intended to be conveyed thereby has been dedicated to street purposes, and is now subject to such an easement. The validity of the deed is assailed chiefly upon two grounds:
1. Defendant contends that the plaintiff made and recorded a subdivisional plat of Block 11-A of Myers Park, in which is located lot No. 6, the lot in controversy, showing and providing for a street known as Boulevard A, now Morehead Avenue, which, if located as shown, would cover a strip across the front of said lot several feet in width; that said subdivisional plat was subsequently revised, changing said street from a curve to a straight street and narrowing it in width from 110 to 80 feet; that while no lot shown on said plat was conveyed by reference thereto without reserving to the plaintiff in the deed therefor the right to change, alter or close said street, yet conveyances of property elsewhere in Myers Park were made in which this right was not reserved; that while various subdivisions of Myers Park have been platted and the plats recorded, and property in all cases conveyed by reference to the respective plats of the subdivisions in which the particular property is located, yet defendant contends that Myers Park is one single development and the various subdivisional plats, though physically separate, should be treated as constituting constructively a unit and as amounting together to one single map; and that, by reason of these facts, Morehead Avenue was irrevocably dedicated to street purposes immediately upon recordation of said original subdivisional plat of Block 11-A.
For this position the defendant relies upon Collins v. Land Co., supra, as a controlling authority. But we think there is a distinction between theCollins case and the one at bar. It appears from the agreed facts that the Stephens Company has made no conveyance of any lot on Morehead Avenue with reference to the original subdivisional plat on which that street was designated. It further appears that no conveyance of any lot shown on said plat was ever made in which the right to alter or close streets, not adjacent to the lots conveyed and not necessary to their full enjoyment, was not reserved specifically to the plaintiff in the deeds made by it, and that Morehead Avenue was not necessary to the full enjoyment of such lots thus sold in Block 11-A.
On the other hand, in the Collins case, the improvement company had the land laid off into city lots, separated by streets, and a plat thereof was made, upon which certain portions were designated as streets and others as lots. Thereafter, without reserving the right to alter or close any street, it proceeded to sell some of the lots with reference to this map. Later, an attempt was made to impeach and lessen the effect of the map mentioned in the conveyances of property and *Page 342 
to which reference had been made in the deeds of sale. Under these circumstances it was held that the streets had been dedicated to the use of the public, and that the purchasers of the lots had acquired the right to have the same kept open. But this is not the case now before us, as will appear from the facts agreed.
Furthermore, Morehead Avenue was never opened or used as shown on the original subdivisional plat; but, as subsequently revised, constructed, and now existing, serves all necessary or useful purposes, and is wider than the average street in Myers Park or in the city of Charlotte.
The question then arises, Are all of these subdivisional plats to be regarded as a unit so that, after the recordation of one and the sale of lots thereby, all others thereafter recorded instantly become constructively a part of the first plat, and that no change may be made in the latter plats, even though there has been no conveyance by reference to the latter plats?
This, we think, must be answered in the negative under the facts and circumstances of the instant case, for each plat is in fact, and was designed to be, a separate, distinct and integral subdivision.
Moreover, it appears that no harsh or arbitrary action has been taken by the plaintiff and no unreasonable exercise of the reservations contained in its deeds is presented for consideration. Hence, upon the record, we think the plaintiff's position in this respect should be sustained.
It follows, of course, when one of these subdivisional plats has been recorded, and lots sold with reference thereto, the principles of estoppel and dedication then apply to the particular subdivision covered thereby.
2. Defendant further contends that Boulevard A, now Morehead Avenue, appears upon the "key map" as a curved street, whereas the said street, as actually located and as shown upon the revised subdivisional plat, is straight; that although said "key map" has never been referred to in the conveyance of any property in Myers Park, yet defendant contends it has been on record in the office of the register of deeds for Mecklenburg County, where it was open to inspection by any prospective purchasers of property who may have been, and doubtless were, influenced thereby; and that as soon as any property was sold in Myers Park, even though in all conveyances a particular subdivisional plat was referred to, all streets shown upon said key map were immediately and irrevocably dedicated to the purchasers and the public.
The correctness of this position must depend upon the character and purpose of the "key map." The plaintiff, as a matter of accommodation, and merely for the purpose of outlining in a general way its proposed development, and for convenience and assistance to attorneys in *Page 343 
preparing abstracts of titles, caused to be made and spread upon the records a plat of its entire development, known and designated as a "key map." This map, while showing accurately the exterior boundaries of the entire tract, the boundaries of the various tracts purchased by the plaintiff, to make up its entire holdings, and, in a general way, the relative location and contiguity of blocks and lots within the various tracts and the general location of streets, yet it is not sufficiently definite in its details to furnish a correct description of any lot, block or street, and was neither intended nor used for the purpose of description or sale in the actual conveyance of property. In every instance, before any lot was offered for sale or conveyed, subdivisional plats of one or more blocks were made, giving in detail and with accuracy the description of all blocks, lots and streets adjacent thereto, and conveyances in all cases were made by reference to these subdivisional detailed plats. No reference has been made in any deed to this key map, and no sales were ever made by it. Hence it would appear that said map alone, considering the manner of its use, is not sufficient to effect a dedication of the streets shown thereon. "It is the offer of sale by the plat, and the sale in accordance therewith, that is the material thing which determines the rights of the parties." Collins v. Land Co., supra.
After a careful investigation of the entire record we think his Honor,Judge Harding, correctly decided the case in accordance with law and precedent.
It is proper to say that, in considering this appeal, we have found the excellent briefs filed by counsel on both sides of material aid and assistance.
Affirmed.