LeROY LEE v. EVERETT V. WALKER, CITY INSPECTOR OF BUILDINGS OF THE TOWN OF SOUTHERN PINES; C. N. PAGE, MAYOR OF THE TOWN OF SOUTHERN PINES; L. V. O'CALLAGHAN, C. S. PATCH, JR., HARRY LEE BROWN, LLOYD CLARK AND WALTER E. BLUE, COMMISSIONERS OF THE TOWN OF SOUTHERN PINES; AND THE TOWN OF SOUTHERN PINES.

(Filed 1 February, 1952.)

**1. Dedication § 2—**
> The act of selling lots by reference to a map which shows streets and alleys is a dedication of such streets and alleys to the public use, and gives each purchaser of a lot the right to have all and each of the streets and alleys kept open, regardless of whether dedication of such streets and alleys is accepted by the municipality within which they lie.

**2. Dedication § 3—**

The act of selling lots with reference to a map showing streets and alleys is but a revocable offer of dedication as far as the public is concerned, and neither imposes burdens nor confers benefits upon the public unless and until the public accepts the dedication.

**3. Municipal Corporations § 25b—**

A municipality has the right to determine where its streets and alleys shall be and may not be forced to maintain a street or alley by dedication.

**4. Dedication § 6—**

The easement acquired by those who purchase lots by deeds which refer to a map showing streets and alleys cannot be defeated without their consent by a withdrawal of the dedication except in the manner provided by G.S. 136-96.

**5. Dedication § 5—**

The owners of lots who have purchased same by deeds which refer to a map showing streets and alleys may lose their rights in such streets and alleys by allowing them to be occupied and used adversely for more than twenty years.

**6. Dedication § 3—Municipality held estopped from asserting any right to alleys dedicated to public.**

Lots in a subdivision were sold by reference to a map showing streets and alleys. The municipality in which the subdivision now lies never opened up any of the alleys but duly passed a recorded resolution relinquishing any title that it might have to the alleys to avoid its statutory duty to keep same in repair, and thereafter recognized them as private property, issued permits for the construction of buildings upon and across the alleys, required them to be listed for taxes, assessed them for paving, and permitted the original dedicator and his successors in title to use and convey the alleys as private property without objection for more than fifty-eight years. *Held:* The municipality is estopped from asserting any right to the alleys in its own behalf or in behalf of the public or any other party or parties.

**7. Same—**

While the mere collection of taxes on dedicated property ordinarily will not estop a municipality from asserting the public character of the land dedicated, it is a factor which may be considered in connection with the other circumstances upon the question of estoppel.

**8. Adverse Possession § 11—**

The rule that no statute of limitations runs against a municipality in regard to streets and parks dedicated to the public does not apply where the offer of dedication is never accepted by it, or if accepted, such streets and parks have been abandoned. G.S. 1-45.

**9. Dedication § 5—**

The rights of purchasers of lots to the use of streets and alleys shown on a map referred to in their deeds may not be enforced by the municipality in which the subdivision lies.

**10. Mandamus § 2b: Municipal Corporations § 37—**

> *Mandamus* will lie to compel the officials of a municipality to issue a building permit at the instance of an applicant who has performed all acts necessary and required by law to entitle him to its issuance.

APPEAL by plaintiff from *Clement, J.,* May Term, 1951, of MOORE.

This is a civil action instituted by the plaintiff, LeRoy Lee, for the purpose of obtaining a writ of *mandamus* against the defendants, requiring them to issue and deliver to him a building permit.

The plaintiff, prior to the institution of the action, applied for a building permit and the defendants refused to issue the same on the ground, as they contended, that the building permit requested by the plaintiff was for the construction of a building which would necessitate the closing of a public alley in the Town of Southern Pines.

When the cause came on for hearing it was agreed to waive a trial by jury and to let the trial judge hear the case on the pleadings, affidavits filed by plaintiff and defendants, and other pertinent evidentiary matters of record.

The trial judge found the facts in detail, the substance of which is as follows:

1. In the year 1884, John T. Patrick, who owned several hundred acres of land near the town of Manly in Moore County, North Carolina, subdivided the land into squares or blocks, lots, alleys, center squares, streets and avenues, and caused a map of the subdivision to be prepared, which map was entitled, "Map of Vineland, Moore Co., N. C.," which map was never recorded. The lots were numbered, and the streets and avenues named. Certain lands were sold by John T. Patrick by lot numbers as designated on the "Map of Vineland, Moore County."

2. The name of Vineland was changed to Southern Pines in 1884 and lots were sold in that year by lot numbers as designated on the "Map of Vineland, Moore County," being in Southern Pines, formerly known as Vineland.

3. In 1886, a map identical with the subdivision of Vineland was prepared but designated as "A Map of Southern Pines, Moore County, North Carolina." This map was recorded in the office of the Register of Deeds for Moore County. There are more than 125 squares or blocks appearing on the map. There are 24 lots in each block, and 4 narrow undesignated spaces leading from the central square in each block to the streets adjoining the respective blocks. On the bottom and left margin of the map designating each square or block appearing on the map, are letters of the alphabet beginning with the letter "B" and ending with the letter "U," both inclusive. On the right side of the map and appearing in each square or block bordering the right margin of the map, are the numbers "1" to "15," both inclusive. The map shows no scale or measurements

of any kind with respect to the width of lots, depth of lots, size of central squares, width of streets, or width of spaces originally intended for alley-ways. Interior blocks can be located only by the point where a perpendicular line from a block designated by a letter intersects a horizontal line drawn from a block designated by a number.

4. The General Assembly of North Carolina in 1887, by Private Laws (Chapter 159) created the municipal corporation of Southern Pines with corporate limits embracing the subdivision entitled "A Map of Southern Pines, Moore County, North Carolina."

5. The charter of the Town of Southern Pines was amended by Chapter 274 of the Private Laws of 1891, among other things, with respect to the powers of the Board of Commissioners, as follows: "Section 13. . . . They shall provide for repairing the streets, sidewalks and alleys and cause the same to be kept clean and in good order, . . . Section 18. That the Commissioners shall have power to lay out and open any new street or streets, park or parks within the corporate limits of said town whenever by them deemed necessary, and they shall have the power at any time to widen, enlarge, add to, change, extend, narrow or discontinue any street or streets, park or parks within said corporate limits, whenever they may so determine by making a reasonable compensation to the owners of property damaged thereby. . . ."

6. On 22 February, 1892, the Board of Commissioners of the Town of Southern Pines duly passed a resolution to the effect that the town did thereby relinquish "all right and title that the town may have in the alleyways and parks within each square or block within the town forever," and, "to the end that the public and all persons buying, selling or dealing in real estate in the Town of Southern Pines might have full notice of the decision of said Board of Commissioners of said town, the said Board of Commissioners caused said order to be duly recorded in the office of the Register of Deeds of Moore County, in which county the Town of Southern Pines is situate, in Book of Deeds No. 7, at page 167, the said order having been recorded therein May 2, 1892." (From Finding of Fact No. XIII)

7. "After the adoption of the order of the Board of Commissioners of the Town of Southern Pines and its record in the office of the Register of Deeds as aforesaid set forth, all persons buying, selling or dealing in real estate in the Town of Southern Pines bought and sold what is generally termed as alleys and central squares designated upon the map referred to in real estate dealing in Southern Pines as the 'Map of Southern Pines, Moore County, N. C.,' indiscriminately and in the same way they sold, bought and used other lots and real estate in said town, and built upon such alleys and central squares so purchased to the same extent and as indiscriminately as they built upon other lots and real estate in said Town of Southern Pines, and such practices with respect to said alleys and real

estate were adopted and indulged in by the Town of Southern Pines it-self through its Mayor and Board of Commissioners and other officers authorized thereto, and this practice and custom has been carried on in said town from the time said order of said Board of Commissioners was adopted until this date, and there has been no exception to said rule ex-cept when the defendant Board of Commissioners of said town, declined and refused to issue to the plaintiff the building permit referred to in the complaint." (Finding of Fact XIV)

8. On 2 March, 1895, John T. Patrick, as attorney in fact for New England Manufacturing, Mining and Estates Company, which company had become successor in title to Patrick, conveyed Lot No. 4 in Block K & 4, and the sixteen foot alleyway adjoining said lot, as designated on "Map of Southern Pines, Moore County, N. C.," to C. D. Tarbell by warranty deed. The plaintiff and his respective predecessors in title since 1895, have held title to Lot No. 4 in Block K & 4, and the adjoining alleyway which is now in dispute, under deeds containing the usual covenants of warranty.

9. ". . . . Following the action of the Board of Commissioners in the adoption of the order and the registration thereof hereinbefore referred to, Chapter 167 of the Private Acts of 1899 was enacted by the General Assembly, and by Section 22 of said Chapter 167 of the Laws of 1899, Section 13 of Chapter 274 of the Private Acts of 1891 was amended so as to strike out the words 'and alleys' in said Section 13 of said Chapter 274 so as to deprive the said Board of Commissioners of the Town of Southern Pines in law of the right to repair any alley within the cor-porate limits of the said Town of Southern Pines; that the said Board of Commissioners of the Town of Southern Pines never at any time ac-cepted any offer of dedication made by any person or corporation for public use of any one of the alleys or central squares contained in any square or block in said Town of Southern Pines as delineated upon what is designated in real estate dealing as the 'Map of Southern Pines, Moore County, N. C.' Instead of accepting any offer of dedication of such alleys and central squares, the said Board of Commissioners of the Town of Southern Pines distinctly refused and repudiated said offer of dedi-cation and caused to be enacted by the General Assembly of North Caro-lina, as hereinbefore set forth, a law taking from said defendant Board of Commissioners the authority to accept such alleys or central squares, and, by the conduct of said defendant Board of Commissioners, since said time, they are estopped in law and equity from attempting to use or regard said alleys and center squares as public thoroughfares over which any portion of the public have a right to travel." (Finding of Fact No. XV)

10. "The alleys and central squares in every block or square of said Town of Southern Pines delineated and indicated on Exhibit A (Map of

Southern Pines) hereunto attached have been for a long period of time, and are now, completely obstructed and blocked, and no protest has ever been made by the defendants, or either one of them with respect thereto until a very recent date when the permit applied for by the plaintiff was refused. No other application for a permit for the building of structures upon the alleys in Southern Pines and the central squares has ever been refused or denied by the Board of Commissioners of the Town of Southern Pines." (Finding of Fact No. XIX)

11. Nearly thirty years prior to the institution of this action, a building located on Lot No. 4, in Block K & 4, and the alley, was burned. The Town of Southern Pines thereafter permitted the construction of the two-story brick building now located on the premises, which covers the entire portion of the lot and alley on West Broad Street, said building having a depth of 75 feet. The plaintiff purchased the premises in August, 1950, for a consideration of $45,000, and has developed suitable and legal plans and specifications for the enlargement of the present building so as to cover substantially the entire parcel of land including that area originally designated as an alley. Prior to the institution of this action, "the plaintiff did and performed all the acts necessary and required by law to entitle him to a building permit from the authorities of the Town of Southern Pines, to enlarge and complete said building." (From Finding of Fact No. IX)

12. "Notwithstanding the refusal of the said defendants to issue said permit for the enlargement of said building, as hereinbefore set forth, the said defendants did issue and deliver to the plaintiff Permit No. 356, dated October 19, 1950, permitting the plaintiff, as owner, to alter and repair the two-story brick building now located on said lot as aforesaid, to be used as a store, at an estimated cost of $10,000 to $14,000, the permit so issued not to include the additions to said building desired and planned by the plaintiff, and this permit to make the repairs, alterations and improvements of the present building was issued notwithstanding it was known to the defendants that the present building for the repairs of which the permit was issued completely obstructs and closes that portion of the lands of the plaintiff designated as an alley, and this building and the obstruction has existed continuously for a period of over twenty years and for a period actually of nearly thirty years prior to the beginning of this action." (Finding of Fact No. XI)

13. In May, 1922, the Town of Southern Pines, acting through its Board of Commissioners, purchased all of Block L & 3 as shown on the said "Map of Southern Pines," and proceeded to obstruct all four of the alleys in said block and the central square, denying to the public generally any use thereof.

14. Approximately ten years ago, the Town of Southern Pines purchased a parcel of land in Block L & 4, as shown on the "Map of South-

ern Pines," as a site for a public library building. The land so purchased includes the alleyway leading from West Broad Street to the center of said block and the alleyway leading to the center of said block from New York Avenue, and the Town of Southern Pines has since that time erected and maintained a public library building on said parcel of land and completely obstructed both alleys and all or a larger portion of the central square in said block.

15. The alley in Block K & 4, leading from New Hampshire Avenue to the central square of said block, is now obstructed by the Jefferson Hotel and has been closed, blocked and denied to public use for more than twenty years next before the institution of this action.

16. The Town of Southern Pines issued a permit in the year 1950 for the construction of a building in Block K & 4, on Pennsylvania Avenue, running back 130 feet therefrom, completely covering and obstructing the alley leading from Pennsylvania Avenue to the central square in said block.

17. "The decision made by the defendant Board of Commissioners to refuse the issue to the plaintiff of the building permit was brought about by the objection of the interested parties, in the main, who have property adjoining or near to the property of the plaintiff, who have failed to provide on their own premises all the conveniences of approach to their back premises. Patch's Department Store is located on premises adjoining or near to the alleyway mentioned in the parcel of land owned by the plaintiff. C. S. Patch, the father of the defendant, C. S. Patch, Jr., is the principal owner of the Patch Department Store, and the defendant C. S. Patch, Jr., is employed in said store either as an employee or part owner. One of the principal protestants against the issue to the plaintiff of the said building permit is the operator of a store near to the plaintiff's property on West Broad Street, who is engaged in the same character of store as the plaintiff proposes to conduct in his new building. One member of a law firm, who are co-partners, in the hearing before said commissioners upon the application for a permit to the plaintiff, represented these protestants, including the owner of the store aforesaid mentioned in competition with plaintiff's store, in opposition to the said permit to the plaintiff, and the other co-partner member of said firm represented the Town of Southern Pines and the defendant Board of Commissioners of said town, and each member of said firm, advised the defendant Board of Commissioners and the Mayor of said town that the issue of a building permit to the plaintiff was wholly illegal and that the defendants had no right in law to issue said permit." (Finding of Fact No. XXIV)

The court being of the opinion that, as a matter of law, from the facts found, there was a valid dedication to and acceptance by the public of the streets, avenues, alleys, and central squares in the Town of Southern

Pines, as shown on the map entitled "A Map of Southern Pines, Moore County, N. C.," filed in the office of the Register of Deeds for Moore County, in Map Book 1, section 2, pages 69 and 70, entered judgment to the effect that the plaintiff is not entitled to the writ of *mandamus* for the issuance of a building permit to obstruct or build upon the alley as described in the complaint, and dismissed the action. The plaintiff appealed, and assigns error.

*Spence & Boyette and W. A. Leland McKeithan for plaintiff, appellant.*
*Pollock & Fullenwider for defendants, appellees.*

DENNY, J. It is now well settled with us that the dedication of a street may not be withdrawn by the grantor or those claiming under him, if the dedication has been accepted and the street or any portion thereof has been opened and is in use by the public. *Russell v. Coggin,* 232 N.C. 674, 62 S.E. 2d 70; *Insurance Co. v. Carolina Beach,* 216 N.C. 778, 7 S.E. 2d 13. Moreover, it is the general rule that, "where lots are sold and conveyed by reference to a map or plat which represents the division of a tract of land into subdivisions of streets and lots, such streets become dedicated to the public use, and the purchaser of a lot or lots acquires the right to have all and each of the streets kept open; and it makes no difference whether the streets be in fact opened or accepted by the governing boards of towns or cities if they lie within municipal corporations." *Hughes v. Clark,* 134 N.C. 457, 47 S.E. 462; *Conrad v. Land Co.,* 126 N.C. 776, 36 S.E. 282; *Green v. Miller,* 161 N.C. 24, 76 S.E. 505; *Sexton v. Elizabeth City,* 169 N.C. 385, 86 S.E. 344; *Wheeler v. Construction Co.,* 170 N.C. 427, 87 S.E. 221; *Elizabeth City v. Commander,* 176 N.C. 26, 96 S.E. 736; *Wittson v. Dowling,* 179 N.C. 542, 103 S.E. 18; *Stephens Co. v. Homes Co.,* 181 N.C. 335, 107 S.E. 233; *Insurance Co. v. Carolina Beach, supra; Broocks v. Muirhead,* 223 N.C. 227, 25 S.E. 2d 889; *Russell v. Coggin, supra.*

It should be kept in mind, however, that the dedication referred to in the rule above stated, in so far as the general public is concerned, without reference to any claim or equity of the purchasers of lots in a subdivision, is but a revocable offer and is not complete until accepted, and neither burdens nor benefits with attendant duties may be imposed upon the public unless in some proper way it has consented to assume them. *Irwin v. Charlotte,* 193 N.C. 109, 136 S.E. 368; *Wittson v. Dowling, supra.* A town has the right to determine where its streets and alleys shall be. *Sugg v. Greenville,* 169 N.C. 606, 86 S.E. 695.

In many of our cases in which a dedication is spoken of as irrevocable, the expression has been used with respect to the purchasers, or some of them, who were insisting on their rights in connection with such dedication. *Irwin v. Charlotte, supra.* And without the consent of the pur-

chasers of lots in a subdivision, the dedication of the streets and alleys shown on the map of such subdivision may not be withdrawn as to them except in the manner provided by law. G.S. 136-96; *Irwin v. Charlotte, supra; Foster v. Atwater*, 226 N.C. 472, 38 S.E. 2d 316. Such purchasers, however, may lose their right to have streets and alleys opened by permitting them to be occupied and used adversely for more than twenty years for purposes inconsistent with their use as streets and alleys. *Hunter v. West*, 172 N.C. 160, 90 S.E. 130; *Gault v. Lake Waccamaw*, 200 N.C. 593, 158 S.E. 104.

In the instant case it must be conceded that there was a dedication of the streets, avenues, alleys, and central squares, as shown on the map of Southern Pines and it does not appear from the record that the dedicator, or his successors in title, have ever withdrawn such dedication in the manner prescribed by G.S. 136-96. However, the dedication of the alley in question was revocable, in so far as the public and the Town of Southern Pines were concerned, unless there was an acceptance of the offer of dedication prior to the withdrawal thereof by conveyance of the alley to C. D. Tarbell by warranty deed in 1895. *Kennedy v. Williams*, 87 N.C. 6; *Stewart v. Frink*, 94 N.C. 487; *S. v. Long*, 94 N.C. 896; *S. v. Fisher*, 117 N.C. 733, 23 S.E. 158; *Sugg v. Greenville, supra; Wittson v. Dowling, supra; Irwin v. Charlotte, supra; R. R. v. Ahoskie*, 202 N.C. 585, 163 S.E. 565; *Gault v. Lake Waccamaw, supra;* 26 C. J. S., Dedication, section 34 (a), page 93, *et seq.*

We now come to the question whether the Town of Southern Pines accepted the offer of dedication of the alleys and central squares as designated on the map of Southern Pines. This question has been answered in the negative by a finding of fact in the court below and such finding is supported by competent evidence.

In amending the charter of the Town of Southern Pines by Chapter 274 of the Private Laws of 1891, the Board of Commissioners of the Town of Southern Pines was directed in section 13 of the Act, to keep in repair the streets, sidewalks, and alleys in the town, and to cause the same to be kept clean and in good order. But in section 18 of the same Act, the Board was given power to discontinue any street or streets, park or parks, within the corporate limits of the town whenever it might determine to do so, by making reasonable compensation to owners of property damaged thereby.

The Board of Commissioners being faced with the mandatory provision in the charter of the town to keep in repair approximately fourteen miles of alleyways, determined on 22 February, 1892, to relinquish all the right and title that the town had in such alleyways and parks within each square, or block, within the town, forever.

There being no evidence offered in the hearing below tending to show that the town had previously accepted the dedication of the alleys and

parks as shown on the map of Southern Pines, by user or otherwise, the action of the Board was tantamount to a formal rejection of the offer of dedication and was so construed and regarded by the Town of Southern Pines, the original dedicator and his successors in title for more than fifty-eight years prior to the time this controversy arose.

According to the findings of fact in the court below, and to which there is no exception, from and after the adoption of the resolution by the Board of Commissioners of Southern Pines, on 22 February, 1892, until the action of the Board in 1950, refusing to issue a building permit to the plaintiff, the town had at all times recognized these alleys and parks as private property. As evidence of this fact, the town has never at any time opened up or kept in repair a single one of the alleys or parks shown on the map of Southern Pines. Prior to October, 1950, it had, without a single exception, issued building permits for the construction of buildings upon and across the alleys shown on said map whenever requested, including the alley in question. And while it does not appear in the findings of fact, it does appear in the evidence adduced in the hearing below that the Town of Southern Pines and the Board of Commissioners of Moore County have through all these years treated these alleys and parks as private property and required them to be listed for tax purposes. Likewise, the Town of Southern Pines, whenever it has paved a street along which any of these alleys abut, the alleys have been treated as private property and duly assessed in the names of the owners thereof for the pro rata part of the cost of such paving.

The mere collection of taxes on dedicated property ordinarily will not estop a municipality from asserting the public character of the land dedicated, but it is a factor that may be considered, and may, in connection with other circumstances, estop the city from asserting the dedication. 26 C. J. S., Dedication, section 63 (a), page 151.

Another significant fact in connection with the action of the Town of Southern Pines on 22 February, 1892, is that the dedicator thereafter conveyed these alleys and parks as private property, giving warranty deeds therefor. And the particular alleyway now in dispute was conveyed to C. D. Tarbell on 2 March, 1895, by warranty deed. The plaintiff and his predecessors in title have owned this alleyway under warranty deeds for nearly fifty-seven years. And no part of the alley has been opened and used by the public in the meantime. Moreover, according to the record, there has been a building or buildings located on Lot 4 in Block K & 4, and the alley in question, for more than fifty years since the lot and alley were conveyed to C. D. Tarbell in 1895.

In our opinion, in view of the facts found by the court below, it makes no difference whether the resolution passed by the Board of Commissioners of Southern Pines on 22 February, 1892, be considered a renunciation of the offer of dedication of the alleys and parks referred to therein, or as

an intention to abandon such alleyways and parks pursuant to the authority contained in its charter. In either event, the Town of Southern Pines, by reason of such action and its conduct since that time, is now estopped from asserting any right to the alleyway in question in its own behalf or in behalf of the public or any other party or parties.

The provisions of G.S. 1-45 which provide that the statute of limitations shall not run against a municipality or other governing body of public ways where the streets, alleys and parks have been dedicated and accepted by the municipality or other governing board, does not apply to streets, alleys and parks that have been offered for dedication and the offer has not been accepted; or if accepted, the streets, alleys or parks have been abandoned. *Gault v. Lake Waccamaw, supra; Savannah v. Bartow Inv. Co.,* 137 Ga. 198, 72 S.E. 1095; *Clokey v. Wabash Ry. Co.,* 353 Ill. 349, 187 N.E. 475; *Mebane v. City of Wynne,* 127 Ark. 364, 192 S.W. 221; *United Finance Corp. v. Royal Realty Corp.,* 172 Md. 138, 191 A. 81; *Charles C. Gardiner Lumber Co. v. Graves,* 63 R.I. 345, 8 A. 2d 862; *Reynolds v. City of Alice,* (Tex. Civ. App.), 150 S.W. 2d 455; 26 C. J. S., Dedication, section 62, page 150, *et seq.*

In the last cited case, it is said: "A mutually acquiesced in abandonment of a public easement terminates same, and frees the property in the hands of the grantor from such easement."

In *Mebane v. City of Wynne, supra,* the Court said: "There having been no acceptance by or for the public, the dedication may become extinct either by an express withdrawal on the part of the original dedicator or by his death before acceptance, or by lapse of time. So, according to that rule, the present attempt on the part of the public authorities to accept the dedication and put the property in use comes too late. The statutory exemption of cities from the operation of the general statute of limitations with respect to public property has no application in this case for the reason that the public rights have never accrued and there are no such rights in existence to be exempted."

Likewise, in the case of *United Finance Corp. v. Royal Realty Corp., supra,* it is said: "Whether the basis for the relief be called equitable estoppel, or abandonment and reverter, is a mere matter of terminology of little relative importance, except to the verbal precision. For in any case it involves the principle that one who having an easement of way whether public or private, suffers his right to lie fallow and unused for a long period of time and throughout the period suffers the owners of the servient tenements, not only to use it as though no such right existed, but actually acquiesces in such use by taking taxes or other charges assessed against it or profits therefrom as though no such easement existed, or by permitting any uses of the land inconsistent with the existence of the easement, may be held to have sufficiently manifested such an intention of abandoning the right as will estop him from asserting it."

It is clear in the instant case, in view of the findings of fact disclosed by the record, that the defendants are not entitled to have the alley in question opened for public use. And if those who are protesting the issuance of the building permit requested by the plaintiff, own property in the subdivision, as shown on the map of Southern Pines, are of the opinion that they have any easement rights in the alley in question, the Town of Southern Pines and its officials are not the proper parties to enforce those rights.

An action for the enforcement of a private easement in a street or alley may be maintained only by an owner or owners of property who are entitled to have the easement enforced and preserved. However, unless facts are made to appear which are substantially different from those found on the present record, no private rights to an easement in the alley in question exist.

The court below having found that the plaintiff has performed all the acts necessary and required by law to entitle him to a building permit from the authorities of the Town of Southern Pines, and having found that by reason of the conduct of the defendant Board of Commissioners of the Town of Southern Pines the defendants are "estopped in law and equity from attempting to use or regard the alleys and center squares as public thoroughfares over which any portion of the public have a right to travel," the court should have granted to the plaintiff the relief sought.

The judgment of the court below is set aside and the cause remanded to the end that judgment may be entered in accord with this opinion.

Error and remanded.