## Pennsylvania Mutual Life Ins. Co. *v.* Cuyler et al., Appellants.

*Municipalities—Discretion, abuse of—Supervision by courts—Streets—Parks—Eminent domain—Road law—Right-of-way—Implied reservation—Taking of land to resell—Act of June 8, 1907, P. L. 466—Parkway in Philadelphia.*

1. The fact that certain sections of the Act of June 8, 1907, P. L. 466, purporting to give the City of Philadelphia the right to take land in condemnation proceedings to resell, were declared unconstitutional, does not invalidate the first section which expressly authorizes the taking of land for a parkway.

2. Under the statutes, ordinances and decisions of the courts, the parkway authorized by the Act of June 8, 1907, P. L. 466, is neither exclusively a street nor exclusively a park, but partakes of the character of both.

3. When land was condemned for the parkway, the owners had a right to proceed at once for their damages before it was formally opened or taken over by the city, which could not be done in case of a street.

4. Where the city took over the land within the lines of the parkway, it also had the right to take over, and did take over, small triangles where the parkway diagonally intersected the lines of existing streets.

5. The city authorities treating such triangles as parks, had a right to improve them so as to prevent their use for public travel, or as a means of approach to abutting property.

6. There is no implied reservation of a right of way over land taken for public park purposes.

7. The fact that proceedings instituted to condemn land for the parkway were in the quarter sessions and the parkway was therein named a street, does not change the character of the land nor preclude the city from using parts thereof for park purposes.

8. An abutting owner has no absolute right of access to his property at every point where it may touch a highway.

9. Municipal authorities, where not inconsistent with the reasonable rights of adjoining landowners and of public travel, may beautify spaces within the lines of highways, with lawns, streets, trees, statues, monuments, etc.

10. In making such use of portions of the highway, and of small triangles condemned in connection therewith, the courts will not interfere so long as the municipal authorities act in good faith, and not in manifest abuse of their discretion.

Argued April 20, 1925. Appeal, No. 206, Jan. T., 1924, by defendants, from decree of C. P. No. 3, Phila. Co., Jan. T., 1916, No. 4785, awarding injunction, in case of Pennsylvania Mutual Life Insurance Co. v. T. DeWitt Cuyler et al., Park Commissioners. Before Mosch-zisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Reversed.

Bill for injunction. Before Davis, J.

The opinion of the Supreme Court states the facts.

The locality is shown by the plan below.

Decree for plaintiff. Defendants, Park Commissioners, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*George Wharton Pepper,* Park Solicitor, with him *Theodore S. Paul,* for appellants.—The parkway is something more than a mere street and possesses as to those portions set apart for ornamental use the characteristics of a park: Opening of Parkway, 249 Pa. 367.

The determination of what portions of the parkway shall be used for park purposes is an administrative function which, with proper legal authority, has been delegated to the appellants and will not be reviewed unless abused: Dyer v. Phila., 276 Pa. 348.

Even if the parkway has only the characteristics of a street, appellee is not entitled to the relief sought: Penna. Mut. Life Ins. Co. v. Phila., 242 Pa. 47; Martin v. Williamsport, 208 Pa. 590; Cobb v. Ry., 218 Pa. 366.

*Joseph Gilfillan,* of *Graham & Gilfillan,* for appellee. —We think the question as to whether the property condemned was for street purposes has been virtually decided by this court in Opening of Parkway, 249 Pa. 367.

OPINION BY MR. JUSTICE WALLING, May 11, 1925:

What is known as the Parkway extends through the City of Philadelphia in a northwesterly direction from the City Hall to Fairmount Park. It was first placed on the city map in 1892, but was removed therefrom two years later. The project was renewed and assumed shape in 1903, when in a more definite form it was again placed on the city map. Other city ordinances were enacted, among them that of 1909, revising the lines of the Parkway, also ordinances appropriating the land, etc. In sympathy with the movement, statutes were enacted, including that of June 8, 1907, P. L. 466, section 1 of which expressly authorizes the taking of land for the

Parkway. True, other sections of the act, purporting to authorize the taking of land within two hundred feet of the Parkway by the city, to resell, were declared unconstitutional in Penna. Mut. Life Ins. Co. v. Phila., 242 Pa. 47, but that did not invalidate the first section. See Opening of Parkway, 249 Pa. 367. Streets of the city as laid out and opened cross at right angles and are intersected diagonally by the Parkway, leaving points of land at the crossings. The city in making condemnations for the Parkway, went outside of what we will call its street lines and took over these points of land in the form of triangles, which are of little if any use for traffic, but are of great value for purposes of ornamentation. What we call the street lines are those extending along the general property line on each side of the Parkway, excluding the spaces or triangles on the outside. The Pennsylvania Mutual Life Insurance Company, plaintiff, owned lots Nos. 1619 and 1621 Arch Street, extending from that street north to Appletree Street, the north part of which lots was taken by the city for the Parkway. The entire lot adjoining on the east, being number 1617 Arch Street, owned by another, was also taken over by the city, including, as the Parkway was opened, a triangle bounded on the south by Arch Street, on the west (being the base of the triangle thirty-three feet in length) by plaintiff's land and on the northeast by the so-called south-west street line of the Parkway. The city took possession of this on or before 1915 and, inter alia, laid a walk of the width of twelve feet, near the base of the triangle, extending from Arch Street to the southwest street line of the Parkway.

Formerly the Parkway was under the control of the Department of Public Works, but in 1915 the city, pursuant to legislative authority (see Act of April 17, 1913, P. L. 93), placed it under the control of the defendants as commissioners of Fairmount Park, who took possession thereof including this triangle, intending to place thereon, near plaintiff's east line, a statue of President

McKinley, and started to remove the walk above-mentioned when restrained by an injunction granted in the instant case. From the bill, answer and testimony, the chancellor made findings of facts, etc., on which in due course a final decree was entered permanently enjoining the defendants from the erection of the statue or any other structure in such proximity to plaintiff's property as to prevent the use of the triangle as a means of access thereto, and defendants brought this appeal.

The decree cannot be sustained. The Parkway is neither exclusively a street nor exclusively a park but partakes of the character of both. The statutes, the ordinances and the decisions of this court have all treated it as more than a street, as, in fact, in a class by itself. That is why it was placed in the hands of the Commissioners of Fairmount Park, and why we held the property owners could proceed at once to have their damages assessed, before it was formally opened or taken over by the city (Philadelphia Parkway, 250 Pa. 257), which could not have been done in case of a street (Volkmar Street, Philadelphia, 124 Pa. 320; Whitaker v. Phœnixville Boro., 141 Pa. 327), and is why the city took over these numerous spaces, outside of the street lines of the Parkway which must be regarded in the nature of parks, for it is unthinkable that the city expended vast sums in acquiring these spaces with no power to use them except as cartways and walks, for which they are practically useless. Treating them as parks, the commissioners may improve them so as to prevent their use for public travel or as a means of approach to abutting property, for there is no implied reservation of a right of way over land taken for park purposes: Prowattain v. City of Philadelphia, 17 W. N. C. (Pa.) 261. If plaintiff can prevent the use of the triangle in question as a park, so may the abutting owners of the other triangles and spaces along the Parkway, which might greatly interfere with the proper development thereof. Plaintiff's land abuts sixty-four feet on Arch Street and more

than that on the southwest street line of the Parkway, so the contention that it is necessary to use the triangle as a means of approach thereto is untenable. Had the city not acquired the triangle plaintiff's east line might still be the center of a party-wall; it is therefore not easy to see how it could be hurt by the use of the triangle as a park. The averment in the bill that plaintiff received less compensation from the city because of an understanding that the triangle was to afford a means of access to its property is denied in the answer and not sustained by any proof.

The ordinance transferring the control of the Parkway to defendants provided that it should be, "Without interfering, however, with the authority of the Departments of Public Works and Public Safety to complete the construction of the street improvements and the installation of the street fixtures required upon the opening of the Parkway or the jurisdiction of the police to enforce the criminal laws in any of said grounds." While this prevented the defendants from interfering with the completion of work then in progress, possibly including the construction of the walk across the triangle adjoining plaintiff's property, it did not render such improvements immune to changes by the Park Commissioners.

The proceedings to assess the damages for property taken for the Parkway were in the court of quarter sessions and called it a street, but the proceedings were properly in that court whether the land was taken for street or park or both. See Opening of Parkway, supra; also section 7 of the Act of April 21, 1855, P. L. 264, 266; section 4 of the Act of May 13, 1857, P. L. 489, and section 5 of the Act of April 23, 1841, P. L. 287. The city's title to the land in question is not controverted nor is its character determined by the name given to the condemnation proceedings. The land lying inside and outside the so-called street lines was taken in the same proceeding and that it was all taken nominally as

a street does not change its character or preclude the city from using parts thereof for park purposes.

Moreover, the decree is wrong, even treating the entire Parkway as a street. An abutting landowner has not an absolute right of access to his property at every point where it may touch the highway; if so he could prevent any adornment thereof by the city. Whereas, municipal authorities, where not inconsistent with the reasonable rights of adjoining landowners and of public travel (as the proposed use of this triangle is not), may beautify spaces within the lines of highways, with lawns, shrubs, trees, statues, monuments, etc., as such authorities may deem proper. "A city has power to set aside portions of its streets or sidewalks for the construction of boulevards, grass plots, or other purposes, useful or ornamental only, and to protect the same from the encroachments of travel": 28 Cyc. 953. And Dillon on Municipal Corporations (5th ed.), vol. 3, sec. 1150, says: "Although a street is ordinarily intended for purposes of public travel, yet the municipal authorities in opening and laying out streets are not rigidly limited to that use. A street may in part unite the two purposes, one to furnish a way for travel and the other as a park or public place. These elements have frequently been united, and there are many cities where roads, boulevards, and avenues have been opened for the purpose of travel, and in connection with such use, lands have also been acquired for the sole purpose of furnishing ample space in order that the enjoyment of the street itself by the inhabitants of the municipality may thereby be enhanced." Also Martin v. Williamsport, 208 Pa. 590, 593, quotes with approval the same principle, as follows: "A municipality may set aside portions of the streets or sidewalks, not necessary to be used for business purposes in particular localities, for the construction of boulevards, parks, grass plots, the planting of shade trees, the maintenance of hitching posts, stepping stones, or for other purposes useful, healthful or ornamental merely. And may pro-

tect the same by reasonable means from the encroachments of travel." Referring to this Parkway in Penna. Mut. Life Ins. Co. v. Phila., supra, we say (p. 56) : "It [the city] is not compelled to use the ground appropriated for the highway solely for sidewalks and cartways, but may devote part of it to æsthetic purposes,·and ornament and beautify it. This is a legitimate use of the land in connection with the primary purpose for which property may be appropriated for a public thoroughfare." That is emphatically applicable to the spaces lying outside the street lines of the Parkway, which are especially suitable for purposes of adornment. How such spaces shall be improved is a matter for the discretion of the commissioners, and so long as they act in good faith, and not in manifest abuse of their discretion, the courts cannot interfere.

Plaintiff's standing to maintain this suit in equity was not raised, nor have we considered it.

The decree is reversed, the injunction is dissolved and plaintiff's bill is dismissed at its cost.