CLARA SPICER, MARY MUNROE, MRS. ELEANOR BEST, MRS. PEARL BRASHEAR, ON BEHALF OF THEMSELVES AND OTHER INTERESTED CITIZENS, v. CITY OF GOLDSBORO, GRAY HERRING, JAMES N. SMITH, J. M. PATE, GARLAND YELVERTON AND E. L. SIMMONS, ALDERMEN.

(Filed 9 October, 1946.)

**1. Injunctions § 8: Dedication § 2—**

In this suit to restrain a municipality from paving a parkway in a street, there was no controversy as to the evidence or the authenticity of

minute records of official acts of the municipal governing board, the sole controversy being whether, upon the facts, the municipality had dedicated the *locus* as a public park. *Held:* The question of intention and dedication upon the undisputed facts is a question of law and no issues of fact were raised for the determination of a jury.

**2. Municipal Corporations § 10: Injunctions § 8—**

In a suit to restrain a municipal corporation from paving a parkway in a street, allegation that the official action directing the paving of the *locus* was arbitrary and capricious does not raise an issue of fact for the determination of a jury when there is no evidence to support the allegation and overcome the presumption that the municipal governing body, acting in a matter within its exclusive jurisdiction, acted in good faith.

**3. Municipal Corporations § 25b: Dedication § 2—**

A municipality is not required to convert immediately to use for travel all portions of land acquired by it for a street, and nonuser or temporary user of a portion of the street for other purposes, not inconsistent with its later conversion for travel when future traffic conditions should so require, does not constitute an abandonment of such portion for street purposes nor a dedication for such temporary purposes.

**4. Same—**

Defendant municipality by official resolution established a parkway in the unpaved portion in the center of one of its streets and thereafter named the "small park now being developed in" the street as requested by petition. Later it directed the removal of the trees and shrubbery "from" the street in order to pave same. *Held:* The official actions of the governing board disclosed as a matter of law that the municipality did not intend to abandon the parkway as constituting a part of the street or to dedicate it for park purposes.

**5. Municipal Corporations § 25b—**

A "park" and a "parkway" are not synonymous: a parkway is merely a part of a street which is planted in trees, shrubs and grass for ornamentation and recreation, but which is subject to conversion into a driveway whenever, in the opinion of the constituted authorities, traffic conditions so require.

**6. Municipal Corporations § 10—**

Where a municipality maintains a parkway in the center, unpaved portion of a street, municipal resolutions directing that the street be paved and that the trees and shrubs be removed from the street to prepare for paving, are definite and certain, since the direction for the removal of the trees and shrubs and the paving of the street necessarily refers to the parkway which constitutes the only unpaved portion.

APPEAL by defendants from *Grady, Emergency Judge,* at June Term, 1946.

Civil action to restrain the abandonment of an alleged park.

The Town of Goldsboro grew up at its present location along the old Wilmington & Weldon Railroad. The railroad owned its right of way,

130 feet wide, and said right of way was used by the town as its main street, known as East Center and West Center Streets. About 1912, after some litigation, the railroad, now Atlantic Coast Line Railroad, built its main line along the western outskirts of the city but continued to use its old tracks in Center Street for certain purposes. On 1 October, 1925, the company conveyed its fee simple title to the land embraced in its right of way from Ash Street to Spruce Street (four blocks), theretofore used for railroad and street purposes, to the defendant city. It agreed to and did remove its tracks from the area conveyed.

Thereupon, in 1928, the city proceeded to pave the full area from Ash to Chestnut Street (three blocks), leaving a ten-foot elevated walkway along the center line. Between Chestnut and Spruce Streets it paved along the outer boundary of each side a strip approximately 21 feet wide. These lanes became one-way streets and were known as a part of East Center, South, and West Center, South, respectively. This left an area between these two paved ways extending from Chestnut to Spruce approximately 60 by 400 feet. This "island" area is the *locus* in controversy.

The minute book of the Board of Aldermen discloses the following entry as a part of the minutes of the meeting on 17 December, 1928:

"Upon motion of Alderman Waters the City Manager was authorized to make a parkway in Center Street between Chestnut and Spruce Streets."

The city officials thereupon proceeded to improve the area. Walkways were laid, shrubbery and grass were planted, and seats were provided. It became a beauty spot used by the public as a place of recreation, rest and relaxation.

On 1 April, 1929, the Goldsboro Woman's Club requested the Board to name "the small park now being developed in South Center Street" the "Joseph Robinson Park." The request was granted.

On 1 April, 1940, a committee representing the Goldsboro Woman's Club and the Garden Club requested the permission of the Board "to place a bronze marker in Robinson Park in memory of Col. Jos. E. Robinson, after whom the park is named." This request was granted with commendation to the ladies "for their thoughtfulness in so memorializing one of our beloved former citizens."

On 18 March, 1946, the Board adopted a motion directing that "South Center between Spruce and Chestnut be paved," and on 5 May, 1946, it officially, by majority vote, directed the city manager to proceed immediately to "remove the trees and shrubs from South Center Street between Chestnut and Spruce Streets and do all other incidental work necessary to prepare the surface for paving the area from Chestnut to Spruce Street." When the city employees began the work thus directed, this action was instituted and a temporary restraining order was issued.

Former members of the Board of Aldermen make affidavit it was their understanding that the Waters resolution was adopted with the intent to create a public park.

When the notice to show cause came on to be heard, the judge below concluded "that issues of fact arise on the pleadings" and thereupon continued the restraining order to the final hearing. Defendants excepted and appealed.

*Langston, Allen & Taylor and W. Dortch Langston for plaintiffs, appellees.*

*W. A. Dees, D. H. Bland, and Ehringhaus & Ehringhaus for defendants, appellants.*

BARNHILL, J.  The defendants contend with some force, and the citation of authority, that plaintiffs have no legal right to maintain this action. We may, however, pass that question without decision and come to the crux of the case.

Are issues of fact raised by the pleadings and, if not, does the evidence offered disclose, as a matter of law, that the area between the paved portions of Center Street from Chestnut to Spruce has been dedicated for use as a public park? We are constrained to answer each question in the negative.

This cause was heard on evidence offered by plaintiffs plus pertinent excerpts from the official minutes of the governing board of defendant municipality. Defendants do not challenge the truth of plaintiffs' evidence except as to the conclusions they seek to draw therefrom, and the authenticity of the minute records is not controverted.

Where the facts are undisputed and admit of but one legal interpretation or can lead to but one conclusion, the question of intention and dedication is one of law. 16 Am. Jur., 424; *Marion v. Skillman* (Ind.), 26 N. E., 676, 11 L. R. A., 55, Anno. 129 Am. St. Rep., 578.

It is true plaintiffs allege the action of defendants in directing that the area in question be prepared for paving was arbitrary and capricious. But this is a conclusion unsupported by evidence. The aldermen had the authority to act. They spoke in respect to a matter within their exclusive jurisdiction. It is presumed they acted in good faith. No fact or circumstance which tends to rebut that presumption is made to appear. Hence, in respect thereto, there is no issue of fact to be submitted to a jury.

Subject to the superior right of the railroad company, what is now known as Center Street in Goldsboro has been maintained by the municipality and used by the people as a public way or street for approximately 100 years. In 1925 the town acquired all the land embraced therein in fee and proceeded to make such use thereof as existing necessities re-

quired. That it is a street subject to the legislative and administrative control of the town was determined as early as 1911. *R. R. v. Goldsboro,* 155 N. C., 356, 71 S. E., 514.

Roads and streets are frequently laid out or dedicated with reference to future requirements as well as with reference to existing conditions or needs. There is no rule of law which demands that all land acquired for such purpose must be converted immediately to use for travel. Hence, mere nonuser, or temporary user for other purposes, of a part thereof is insufficient to show an abandonment. *Basic City v. Bell,* 114 Va., 157, Anno. Cas. 1914 A, 1031.

Here defendant town paved two strips each 21 feet wide along the outer boundaries of so much of Center Street as lies between Chestnut and Spruce Streets. There are shade trees on that part which lies between the two roadbeds thus constructed. Shrubs and grass were added to give it a park-like appearance.

The town officially authorized the creation of a parkway *in* Center Street between Chestnut and Spruce Streets. On petition of the local Woman's Club it gave a name to the "small park now being developed *in* South Center Street." Still later it directed the removal of the trees and shrubs *from* South Center Street and the preparation of the surface for paving.

Thus it appears the official board at all times kept in mind the existence of this area as a part of an existing street. That they did not intend to abandon it as such or to dedicate it to an inconsistent use clearly appears. They in fact did nothing more than create a parkway.

A parkway is not a park. It is merely an ornamental part of a street which may be used for recreational purposes. *Kupelian v. Andrews,* 135 N. E., 502; *Municipal Securities Corp. v. Kansas City,* 177 S. W., 856; *Village of Grosse Pointe Shores v. Ayres,* 235 N. W., 829.

A municipal parkway is a street of special width which is given a parklike appearance by planting its sides or center or both with grass, shade trees, and flowers. *Kleopfert v. City of Minneapolis,* 95 N. W., 908; New Cent. Dic.; Webster, New Int. Dic.

While a parkway is sometimes referred to as a park, the terms are not synonymous, although each may include certain common features of ornamentation and recreation. McQuillin, Municipal Corporations, 2d Ed., sec. 1384; 44 C. J., 1103.

The essential and decisive fact is that a parkway exists when there is a single entire street of which a part is devoted to ordinary purposes of travel and a part to ornamental or recreational purposes. The two portions together constitute a single entire way which has some of the characteristics of a park. *Kupelian v. Andrews, supra.*

A municipality may set off a part of a highway for a particular use, *Hagerstown v. Hertzler,* 175 Atl., 447, and it is within the power of

public officials to beautify space within highway boundaries with lawns, trees, shrubs, flowers, statues, monuments and the like. *Ins. Co. v. Cuyler,* 283 Pa., 422, 129 Atl., 637.

Such action does not constitute an abandonment of that part of the highway which is set apart for a parkway or a dedication thereof to an inconsistent purpose. The area, for its full width, retains its character as a public way subject to conversion into a driveway whenever, in the opinion of the constituted authorities, traffic conditions so require. *Village of Grosse Pointe Shores v. Ayres, supra; S. v. Board of Park Com'rs.,* 110 N. W., 1121, 9 L. R. A. (N. S.), 1045.

The contention that the resolution of 5 May, 1946, may not be construed to refer to, or to authorize the removal of trees and shrubs from, the *locus* is without merit. There are no trees and shrubs in Center Street other than those in the parkway. If the resolution does not refer to these, it is meaningless. Likewise in respect to the resolution of 18 March, 1946, the parkway was the only unpaved part of Center Street. The decision to pave was a decision to pave the parkway area.

Other interesting questions are debated in the briefs. However, our conclusion that there has been no dedication of the *locus* to use as a park as distinguished from a parkway renders discussion thereof inappropriate.

The occasion for the destruction of old landmarks and spots of beauty always arouses sentiments of regret, oftentimes actual resentment towards those whose duty it is to act. This we fully appreciate. But that is not the criterion of decision. Whether the time has arrived when necessity demands the exclusively utilitarian use of the *locus* is for the local authorities to decide. In the absence of abuse of discretion the courts are without authority to interfere.

The judgment below is

Reversed.