CITY OF SALISBURY v. M. C. BARNHARDT; M. C. BARNHARDT, JR.; T. P. SHINN AND SALISBURY MARBLE & GRANITE COMPANY, INC.

(Filed 25 February, 1959.)

**1. Appeal and Error § 22—**

Where there are no exceptions to the admission of evidence or to the facts found, it will be presumed that the findings are supported by competent evidence and are binding.

**2. Appeal and Error § 21—**

An exception to the signing of the judgment presents the questions whether the facts found support the judgment and whether error of law appears upon the face of the record.

**3. Dedication § 2—**

The use of a portion of the width of a dedicated street constitutes an acceptance of the dedication of the entire width of the street, and the nonuser of a portion thereof does not constitute an abandonment, but the municipality has the right at anytime thereafter to use the full width of the street as the growing necessities of the public may require.

**4. Municipal Corporations § 25b—**

Nonuser of a portion of the width of a dedicated street does not constitute an abandonment of the unused portion by the municipality even though such portion is left unused upon the construction of a new street from the used portion of the dedicated street, nor does such circumstance constitute a relocation of the street so as to constitute an abandonment of any portion of the dedicated street.

**5. Adverse Possession § 14—**

Adverse use of a part of a street dedicated to and accepted by the public cannot ripen title in the user when there has been an acceptance of the dedication of the street and no abandonment thereof on the part of the public. G.S. 1-45.

SALISBURY *v.* BARNHARDT.

**6. Dedication § 2: Municipal Corporations § 25b—**

The fact that a municipality has permitted an owner of land adjacent to a street, dedicated to and accepted by the public, to erect and maintain for a number of years a granite wall on a portion of the width of the· street and has assessed the property for improvements for curbing and guttering a new street bordering the unused portion of the dedicated street, does not estop the municipality, upon the later improvement of the dedicated street for its full width, from asserting title for the entire width of the dedicated street.

**7. Municipal Corporations § 30—**

It is not required that land abut directly on a part of a street that has been improved in order to subject it to liability for assessments, as where a lot abuts one street opposite a "y" intersection with a new street.

APPEAL by defendants from *Olive, J.,* March Term 1958 of ROWAN.

This case as No. 521 was argued at the Fall Term 1958 of this Court.

This is an action instituted by the plaintiff, City of Salisbury, against the defendants for the purpose of requiring the defendants to remove from a small triangular strip of property a granite wall which was erected thereon by the defendants in the year 1935.

In the hearing below it was stipulated that a jury trial might be waived and that the judge might hear the evidence, find the facts, and render judgment.

From the stipulations agreed upon by counsel for the plaintiff and for the defendants, from evidence introduced from the pleadings, and from the testimony of witnesses, the essential findings of fact made by the trial court and set out in the judgment, from which appeal is taken, are as follows:

"1. That South Main Street as shown upon the map of the property of Samuel R. Harrison, as surveyed by C. M. Miller, C. S. in December 1901, and recorded in the office of the Register of Deeds of Rowan County in Book of Maps No. 1 at page No. 41, is a dedicated public street, in the City of Salisbury, opened, accepted, and used by the public and accepted and maintained by the plaintiff City, prior to the year 1925 and since said·date, except that the triangular strip of land which is the subject of the controversy in this action has not been so used or maintained since 1925.

"2. That the defendants, M. C. Barnhardt, M. C. Barnhardt, Jr., and T. P. Shinn, are the owners of lots 4 and 5 as shown upon the map of the said property of Samuel R. Harrison, and are also the owners of the corporate defendant, and that said defendants ac-

quired title to said lots by mesne conveyances from said Samuel R. Harrison, the original subdivider.

"3. That said lots 4 and 5, as aforesaid, abut said South Main Street, shown on said map, and are located at the Southeast corner of the intersection of said South Main Street and Vance Street in the City of Salisbury, North Carolina.

"4. That none of the defendants herein acquired any interest in said lots until May 19, 1924, as to lot number 4, and May 25th, 1925, as to lot number 5. That thereafter the individual defendants became the owners of said lots through various conveyances * * *.

"5. That none of the deeds, aforesaid, included the strip of land in controversy.

"6. That in June of the year 1916, the governing body of the plaintiff City created Local Improvement District No. 3, pursuant to Chapter 56 of the Public Laws of 1915, embracing that part of South Main Street in the City of Salisbury from Thomas Street South to the intersection of Vance Street for the purpose of curbing, guttering, and paving said street and the levying of assessments against the abutting owners for a part of the costs thereof.

"7. That lots 4 and 5, as aforesaid, were assessed by the governing body of the plaintiff City, for a part of the costs of said improvements * * *.

"8. That in October of the year 1916, the Board of Aldermen of the plaintiff City ordered that a street be opened and improved from South Main Street at its intersection with Vance Street South through property owned by the plaintiff City, and which was a part of the cemetery property, to Fulton Street.

"9. That in conjunction with the paving of South Main Street within the boundaries of the Local Improvement District No. 3, as aforesaid, which was completed in 1917, the street ordered to be opened and improved by the Board of Aldermen in October of the year 1916, as aforesaid, was opened, paved, curbed, and guttered, and was thereafter known as South Main Street and that the street shown on the Harrison Map, as aforesaid, became known as Old South Main Street.

"10 That the construction of the new street left unused as a street that portion of the right of way of Old South Main Street which is the strip of land shown upon the blueprint attached to the plaintiff's complaint and marked Plaintiff's EXHIBIT A, and which is the subject of the controversy in this action.

"11. That between the years 1925 and 1935 the defendants planted shrubbery on the strip of land shown on said blueprint.

"12. That in 1935, the defendants constructed a granite wall on a portion of said strip and that the location of said wall in relation to the street is shown on said blueprint marked Plaintiff's EXHIBIT A.

"13. That no demand was made upon the defendants to remove said wall and vacate said strip of land until November 1956, and that said wall is still standing.

"14. That since 1925, no part of the triangular strip, which is the subject of the controversy in this action, has been used as a street, or sidewalk or highway.

"15. That in 1936, the North Carolina Highway & Public Works Commission, at the request and approval of the plaintiff City, widened South Main Street, but no widening was done in front of the strip of land in controversy in this action.

(16 omitted.)

"17. That entrances were made over the curb and sidewalk from the paved portion of South Main Street into Old South Main Street.

"18. That both the sewer line and a water line are located in said Old South Main Street but not in the strip of land in controversy.

"19. That improvements to Old South Main Street, consisting of the paving, curbing, and guttering of same, were commenced prior to the institution of this action and are partially completed.

"20. That no part of the street shown on the map of the property of Samuel R. Harrison, as aforesaid, has ever been withdrawn by the dedicator, nor by anyone claiming under him, pursuant to G.S. 136-96, nor has said street or any portion thereof been closed pursuant to G.S. 153-9(17)."

From the foregoing findings of fact, the court concluded as a matter of law that the strip of land which is the subject of controversy in this action has not been abandoned by the plaintiff City and that the defendants are not entitled to the possession of any part thereof. Judgment was entered accordingly, and the defendants appeal, assigning error.

*J. W. Ellis and John C. Kesler, attorneys for plaintiff.*
*Walser & Brinkley, Craige & Craige, attorneys for defendants.*

DENNY, J.   In the hearing below no exceptions were taken to the

admission of evidence or to the facts as found by the court. Hence, such findings are presumed to be supported by competent evidence and are binding on appeal. *Goldsboro v. R.R.*, 246 N.C. 101, 97 S.E. 2d 486, and cited cases. The exception to the signing of the judgment, however, presents these questions: (1) Do the facts found support the judgment; and (2) does any error of law appear upon the face of the record? *Goldsboro v. R.R., supra; Bailey v. Bailey,* 243 N.C. 412, 90 S.E. 2d 696; *Dellinger v. Bollinger,* 242 N.C. 696, 89 S.E. 2d 592; *Gibson v. Insurance Co.,* 232 N.C. 712, 62 S.E. 2d 320.

The defendants' property, conveyed to them as lots 4 and 5, as laid out on the Harrison map hereinabove described, abuts on South Main Street for a distance of 120 feet. The new street opened in 1916 from South Main Street at its intersection with Vance Street through property owned by the plaintiff City to Fulton Street, left an unimproved area of the street in front of lots 4 and 5 two feet wide at the intersection with Vance Street and 14 feet wide at the southwestern corner of lot 5, this area being wholly within the boundaries of South Main Street as laid out on the aforesaid map. When the new street was opened and designated South Main Street in 1916, the street shown on the Harrison map, south of Vance Street, became known as Old South Main Street. It has never been closed or abandoned but has been used continuously as a public street. However, traffic has been diverted from Old South Main Street into the new portion of South Main Street around the area or triangle in controversy. If Old South Main Street is improved and paved as contemplated, the City must utilize the area in controversy, otherwise this triangle will jut out into the street at the intersection with Old South Main Street with the new portion of South Main Street as constructed in 1916.

The defendants stipulated that no deed conveying lots 4 and 5 from the original subdivider or any mesne conveyances in their chain of title, including the last one dated 2 February 1957, included the strip of land in controversy or any portion thereof. Consequently, the defendants claim no paper title to the area involved in this action.

It was further stipulated and found as a fact in the hearing below that no part of the street shown on the aforesaid map has ever been withdrawn by the dedicator, nor by anyone claiming under him, pursuant to G.S. 136-96, nor has said street or any portion thereof been closed pursuant to G.S. 153-9 (17).

Moreover, G.S. 1-45 provides as follows: "No person or corporation shall ever acquire any exclusive right to any part of a public road, street, lane, alley, square or public way of any kind by reason of any occupancy thereof or by encroaching upon or obstructing the same in

any way, and in all actions, whether civil or criminal, against any person or corporation on account of an encroachment upon or obstruction or occupancy of any public way it shall not be competent for a court to hold that such action is barred by any statute of limitations."

Exceptions to this statute have been recognized in at least two situations: (1) where a street has been dedicated and the municipality never accepted the dedication; and (2) where the dedicated street or streets, if accepted, had been abandoned. *Lee v. Walker,* 234 N.C. 687, 68 S.E. 2d 664, and cases cited therein.

In our opinion, on the facts found below, there is no evidence on this record to support the view that in opening the new street in 1916, which is now known as South Main Street, constituted a relocation of the street shown on the map referred to herein, or that it constituted an abandonment of any portion thereof. The cases of *Moore v. Meroney,* 154 N.C. 158, 69 S.E. 838 and *Cahoon v. Roughton,* 215 N.C. 116, 1 S.E. 2d 362, cited by the appellants, are not controlling on the facts in this case.

When a street has been dedicated and a municipality has opened it, and it has been used continuously for many years, although the use may not have extended to the full width of the street, the unused portion has not by reason of nonuser lost the character of a street for which it was originally dedicated. *Insurance Co. v. Carolina Beach,* 216 N.C. 778, 7 S.E. 2d 13; *Spicer v. Goldsboro,* 226 N.C. 557, 39 S.E. 2d 526.

In 25 Am. Jur., Highways, section 112, page 410, *et seq.,* it is said: "Abandonment will not ordinarily be implied from mere nonuser when the public need has not required the use. Statutes in some states provide that roads not worked or used for a specified number of years cease to be highways, or that the entire abandonment of a highway for a specified number of years shall work a discontinuance thereof, but the mere diversion of travel from a small portion of the way which the public authorities have failed to make passable will not work a discontinuance thereof under such a provision, even though continued for the statutory period. Some courts hold that a marginal portion of a street or highway may be lost by nonuser. Others, however, take the position that mere nonuser of a portion of the width of the way will not work an abandonment of the public rights therein; that if the way is originally laid out as of a certain width, the public is entitled to a way of that width, notwithstanding the worked part and the part actually used by travelers may have been less than that; and that the traveled path may also from time to time be widened or otherwise improved, as the growing necessities of the public may re-

quire, within the limits of the way as originally laid out."

It is also said in 26 C.J.S., Dedication, section 63 b, page 556: "The fact that a municipality improves or directs improvement of part only of the property dedicated does not constitute an abandonment of the balance; and it has similarly been held that the public use of only a part of land dedicated for a public highway does not constitute an abandonment of the unused portion. Even nonuser of a portion of a street, fenced in with abutting property, has been held not to constitute an abandonment of the street by the public."

Likewise, in 39 C.J.S., Highways, section 131 b, page 1068, we find the following statement: "If a highway is legally laid out and established, the mere fact that the public does not use it to its entire width will not of itself constitute an abandonment of any portion thereof. The rule is the same whether or not the road is fenced by the adjoining landowners. Encroachments on a highway continually used cannot be legalized by mere lapse of time; the limited use will not lessen the right of the public to use the entire width of the road whenever the increased travel and exigencies of the public render this desirable."

In *Sipe v. Alley*, 117 Va. 819, 86 S.E. 122, the defendant had enclosed part of a public street with a fence and this condition had existed for a long period of time. In holding that this was not an abandonment of the street or of the enclosed portion thereof, the Supreme Court of Appeals of Virginia said: "Delay in opening a street is not an abandonment thereof, except so far as statutory or charter provisions fix a rule to the contrary. Nor is a mere nonuser of a portion of a street fenced in with abutting property an abandonment of the street by the public. Some private use of the public way is not infrequently accorded abutting owners until the public use requires its surrender. *Town of Basic City v. Bell*, 114 Va. 157, 76 S.E. 336."

In the case of *Kelroy v. City of Clear Lake*, 232 Iowa 161, 5 N.W. 2d 12, the Court said: "It has been held many times that the fencing in of a street or the planting of trees, shrubs, flowers and grass are not such permanent improvements as work an estoppel even though the city does not complain. *Kuehl v. Bittendorf*, 179 Iowa, 1, 8, 9, and citations, 161 N.W. 28; *Christopherson v. Incorporated Town*, 178 Iowa 893, 898, 901, 160 N.W. 691."

The facts as found in the hearing below do not disclose any affirmative acts on the part of the plaintiff that in our opinion misled these defendants or that would justify the conclusion that the plaintiff had abandoned the area of land in controversy, and we so hold.

We further hold that the facts in this case are not of the character that would justify holding that the defendants are entitled to prevail

under the doctrine of equitable estoppel. The fact that the defendants saw fit to construct an attractive, ornamental wall instead of an ordinary, or an ornamental, fence enclosing the area in controversy will not be construed to be such an improvement that its removal will constitute an injustice to these defendants. They knew for many years prior to the time they constructed the wall exactly where their lines were with respect to the street and that they were constructing the wall within the boundaries of the street as laid out on the Harrison map. McQuillin, Municipal Corporations, Vol. 11, section 30.181, page 98, *et seq.* The facts in this case are clearly distinguishable from those in *Lee v. Walker, supra.*

25 Am. Jur., Highways, section 115, page 413, *et seq.,* states: " * * * to constitute an estoppel against the public the acts relied on must be such as to work a fraud or injustice if the public is not held to be estopped. Obviously, one who knowingly encroaches upon a highway is not within the protection of the rule. If the boundaries are fixed by a recorded map, subsequent purchasers of lots abutting thereon are charged with notice thereof, and the fact that they purchase under the impression that a fence encroaching on the street is on the boundary line thereof will not affect the public rights, provided the municipality has done nothing to mislead them."

Moreover, the fact that lots 4 and 5 were assessed for the improvements made in 1916 does not constitute an estoppel, it rather confirms the fact that the City claimed the land now in controversy as property dedicated for street purposes. *Anderson v. Albemarle,* 182 N.C. 434, 109 S.E. 262.

In the last cited case, this Court, speaking through *Clark, C.J.,* said: "Land need not necessarily abut directly on the part of the street that has been improved to subject it to liability for its share of the cost of improvement. Indeed, premises separated from a street by a small stream, but having access to the street by means of bridges, are premises abutting on the street though the owner of the premises is not the owner of the bed of the stream, and he is liable to assessment provided he has the right of ingress and egress over the intervening land to the improvement." Cf. *Winston-Salem v. Smith,* 216 N.C. 1, 3 S.E. 2d 328 and *In re Assessments,* 243 N.C. 494, 91 S.E. 2d 171.

The judgment of the court below is
Affirmed.