TOWN OF ORIENTAL, PLAINTIFF v. LACY HENRY AND WIFE, JUDY B. HENRY, DEFENDANTS

No. COA08-896

(Filed 7 July 2009)

**Cities and Towns; Highways and Streets— action to clear title to property—public use—withdrawal from dedication— abandonment**

An unpaved portion of a town street that was never paved or used for vehicular traffic remained dedicated to public use, although plaintiff town leased portions of the pertinent property, because (1) the fact that a municipality improves or directs improvement of only part of the property dedicated does not constitute an abandonment of the balance; (2) the pertinent property was not subject to withdrawal from dedication since that property was but an unopened portion of a street which was otherwise actually opened and used by the public; (3) even assuming *arguendo* that the property was subject to withdrawal, land may not be withdrawn from dedication until the fee owners record in the register's office a declaration withdrawing such land from the use to which it has been dedicated, and a former owner's with-

drawal of dedication was not legally effective since she was not the fee owner of the property on the date she filed the dedication of withdrawal after she already quitclaimed the property to defendant; (4) a mere nonuse of a portion of a street fenced in with abutting property is not an abandonment of the street by the public; (5) the fencing in of a street or the planting of trees, shrubs, flowers, and grass are not such permanent improvements as work an estoppel even though the city does not complain; and (6) although defendants have paid taxes on the property since 1989, the mere collection of taxes on dedicated property ordinarily will not estop a municipality from asserting the public character of the land dedicated.

Appeal by Plaintiff from order entered 2 May 2008 by Judge Kenneth F. Crow in Pamlico County Superior Court. Heard in the Court of Appeals 29 January 2009.

*Wheatly, Wheatly, Weeks & Lupton, P.A., by Stevenson L. Weeks, and Davis, Hartman, Wright, PLLC, by Michael Scott Davis, for Plaintiff.*

*Lee, Hancock & Lasitter, PA, by Moses D. Lasitter, and McAfee Law, P.A., by Robert J. McAfee, for Defendants.*

STEPHENS, Judge.

## I. Procedure

The Town of Oriental ("the Town") filed an action on 6 March 2003 in the Superior Court of Pamlico County against Lacy and Judy B. Henry ("the Henrys"), and E. Sherrill and Phyllis H. Styron ("the Styrons"), seeking to clear title to real property known as the terminus of South Avenue ("the property" or "the South Avenue terminus"). The Town also filed a Notice of Lis Pendens with respect to the property on that date.

On or about 23 May 2003, the Henrys filed an answer and counterclaim, seeking, *inter alia,* to be declared the owners of the real property, raising certain affirmative defenses, and moving to dismiss the Town's claim pursuant to Rule 12(b)(6). On 25 June 2003, the Town amended its complaint, adding an alternative claim based on adverse possession, and filed its reply and affirmative defenses to the Henrys' counterclaims. On or about 27 June 2003, the Henrys filed an answer to the Town's amended complaint. On 10 July 2003, the

Pamlico County Clerk of Superior Court entered default against the Styrons for failure to plead or otherwise appear in the case.[1]

On 5 April 2007, the Town filed a motion for summary judgment. The Town's motion for summary judgment and the Henrys' 12(b)(6) motion were heard on 31 December 2007. Order was entered 2 May 2008 denying summary judgment for the Town, treating the Henrys' 12(b)(6) motion as a motion for summary judgment, and granting summary judgment for the Henrys. From this order, the Town appeals.

## II. Facts

On 30 March 1899, the Town of Oriental, through its Board of Town Commissioners ("Commissioners"), "[o]rdered that the Commissioners meet the first Monday in May [of 1899] and lay off the Streets for the town." On 4 December 1899, the Commissioners ordered the town clerk to write and post the following notice in the Town:

> To the citizens of the town of Oriental. Please take [n]otice, that whereas the board of town commissioners have had the Streets run out and the corners located so that any and all persons can know where the Streets are, the citizens of this town are hereby notified that any person or persons building houses or fences on lands condemned by the board of commissioners for Streets, will do so at their own risk and expense.

On 3 July 1900, the Commissioners "[o]rdered that Henry Brown, Jr. of Newberne be employed to make a survey and plot of the Town at a wage[] of $4.00 per day and expenses." Henry Brown, Jr. completed the survey and plot of the Town and presented the Town with a bill for his services at the 3 October 1900 Commissioners' meeting.

In June 1907, an official map of the Town was "[t]raced from [the] blueprint of a survey made by H.A. Brown, Jr.[,] Surveyor[.] Survey dated July 1900." The map was recorded in Deed Book 51, Page 600 in the Pamlico County Registry and subsequently transferred to Map Book 11, Page 20 in the Pamlico County Registry. The map depicts the Town divided into 32 blocks with South Avenue running in an east-west direction, bordering lot 31 on the south side and lot 32 on the north side, intersecting Wall Street, and terminating at Raccoon Creek.

---

1. The Styrons are not parties to this appeal and the record does not indicate that the Styrons challenged the entry of default.

The Oriental Bulkhead and Improvement Company ("OBIC") had a survey entitled "Survey Oriental Bulkhead Property" recorded in Plat Cabinet 1, Slide 3, Page 19 of the Pamlico County Registry.[2] This survey depicts the property fronting Raccoon Creek subdivided into approximately 34 lots and shows South Avenue running in an east-west direction, intersecting Wall Street and the newly designated Avenue A, and terminating at Raccoon Creek.

A map of the Town prepared by R.C. Holton, County Surveyor, in October 1939 compiles the survey completed by H.A. Brown, Jr., a survey of property surrounding Raccoon Creek referred to as Neuse River Heights completed by P.J. Delemar in 1906, and the survey done by OBIC. This map again depicts South Avenue running in an east-west direction, intersecting Wall Street and Avenue A, and terminating at Raccoon Creek.

The property at issue is a portion of South Avenue between Avenue A and Raccoon Creek. Unlike the rest of South Avenue, this property was never paved or used for vehicular traffic. However, some evidence in the record suggests the property was used by pedestrians to access Raccoon Creek.

By deed dated 16 October 1911, and recorded in Book 54, Page 590 of the Pamlico County Registry, L.B. Midgette and wife, Rebecca M. Midgette, conveyed a tract of land to OBIC, which included the South Avenue terminus. On 17 October 1911, OBIC executed a mortgage in favor of the Bank of Oriental which was recorded in Book 57, Page 296 of the Pamlico County Registry.

On or about 30 April 1917, the Bank of Oriental foreclosed on the mortgage deed to OBIC. A court-appointed receiver for the Bank, W.J. Swann, sold the tract of land to Benjamin Wallace O'Neal ("O'Neal").

Beginning in or around 1937, the Town leased the South Avenue terminus to various individuals and entities, including Defendant Lacy Henry, his father Lacy Carl Henry, and the Henry family business, Neuse Ways Company. The Town's Official Minutes ("Minutes") from 7 December 1937 reflect that the Town "lease[d] the water front at the foot of [South Avenue] at the North west [sic] end, to Hampton Spruill for ten years[.]" The Minutes from 7 May 1951 reflect that the Town considered a transfer of the lease of the South Avenue terminus to Neuse Ways Company and its owners Lacy Henry and Curtis Benton. On 10 July 1958, the Minutes reflect that Lacy Henry re-

---

2. The record does not indicate when this survey was made or recorded.

quested a renewal of the lease of the property to Neuse Ways Company, as the lease was set to expire 30 June 1959. The Commissioners agreed to a ten-year lease, from 30 June 1959 to 30 June 1969. By lease executed on 16 July 1969, the Town again renewed the lease. The lease provides:

> We, the governing board of commissioners of the Town of Oriental, do hereby lease to Mr. L.C. Henry of Oriental, N.C. the rights and privileges for private use the extension of South Avenue beyond the area of traffic usage and extending to Raccoon Creek, said property to be utilized as the site of a marine railways business; said lease to endure for a period of five (5) years from date of July 1, 1969 and thus to terminate on June 30, 1974.

On 2 July 1974, the Minutes reflect that the lease was renewed for another five years. By lease dated 19 May 1977, and recorded in Book 190, Page 298 of the Pamlico County Registry, the Town leased the property to Lacy C. Henry and Defendant Lacy M. Henry for a period of 15 years. The lease states:

> WHEREAS, the Town of Oriental is the owner of a public dedicated street known as South Avenue;

> WHEREAS, the Town of Oriental desires to lease that portion of South Avenue which is not used by vehicular traffic to Lacy M. Henry and Lacy C. Henry.

The lease more particularly describes the property to be leased as follows:

> Bounded on the North by the land of Garland Fulcher[;] bounded on the [East] by the paved portion of South Avenue; bounded on the South by Neuse Ways and Marine, Inc.; and bounded on the [West] by Raccoon Creek (Oriental Harbor). Said land being the extension of South Avenue beyond the area of vehicular traffic and extending to Raccoon Creek and shown on a map entitled "Survey, Oriental Bulkhead Property", [sic] which is recorded in Map Book 1, page 19, Pamlico County Registry.

In 1979, O'Neal died testate, leaving his property to Ann Wadley Wing ("Wing"). On 7 September 1982, the Minutes reflect that the Town received an offer from Defendant Lacy Henry to purchase the South Avenue terminus property which he was currently leasing from the Town. The record does not reflect any response to this offer.

On 28 March 1995, Wing executed a quitclaim deed in favor of Defendant Lacy Henry, releasing all of her right, title, claim, and interest in the South Avenue terminus property. Upon receiving the quitclaim deed, the Henrys erected a fence along the boundaries of the property, except for that portion of the property fronting Raccoon Creek.

On 21 July 1995, Wing filed a Declaration of Withdrawal pursuant to N.C. Gen. Stat. § 136-96, attempting to withdraw dedication of the subject property for public or private use. On 6 March 2003, the Town initiated this action to clear title to the property.

### III. Discussion

The Town contends the trial court erred in granting summary judgment in favor of the Henrys and in not granting summary judgment in favor of the Town. We agree.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972). Furthermore, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (internal quotation marks omitted). The standard of review for summary judgment is *de novo. Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006).

Generally, where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into subdivisions of streets and lots, such streets become dedicated to public use, and the purchaser of the lot or lots acquires the right to have each of the streets kept open. *Wofford v. Highway Commission*, 263 N.C. 677, 683, 140 S.E.2d 376, 381, *cert. denied*, 382 U.S. 822, 15 L. Ed. 2d 67 (1965). However, insofar as the general public is concerned, such dedication is but a revocable offer and is not complete until the offer is accepted in some proper way by the responsible public authority. *Owens v. Elliott*, 258 N.C. 314, 317, 128 S.E.2d 583, 586 (1962).

A municipality may or may not accept the dedication at its election. *Osborne v. North Wilkesboro*, 280 N.C. 696, 699, 187 S.E.2d 102,

104 (1972). Acceptance is conclusively presumed if the responsible public authority improves the streets and opens them to public use. *Id.* "In the event of acceptance of [a] portion of [a] street, . . . the unaccepted portion would remain exactly as it was before it became a part of the town, dedicated to public use, though not kept in repair by the town, and is not to be obstructed because it must at all times be free to be opened as occasion may require." *Home Real Estate Loan & Ins. Co. v. Carolina Beach*, 216 N.C. 778, 788, 7 S.E.2d 13, 20 (1940). The municipality "has no right to relinquish or give away the unaccepted portion of the dedicated street." *Id.*

If, however, for a period of fifteen years or more, the municipality fails to improve and open to public use a dedicated street, the owner may file and record a declaration withdrawing the street from dedication. N.C. Gen. Stat. § 136-96 (2007); *Osborne*, 280 N.C. at 699, 187 S.E.2d at 104. Nonetheless, "[t]he dedication of a street . . . may not be withdrawn if the dedication has been accepted and the street, *or any part of it*, is actually opened and used by the public." *Tower Dev. Partners v. Zell*, 120 N.C. App. 136, 142, 461 S.E.2d 17, 21 (1995) (citing *Food Town Stores, Inc. v. City of Salisbury*, 300 N.C. 21, 29, 265 S.E.2d 123, 129 (1980)).

In this case, OBIC caused a plat of its properties to be placed on the public records of Pamlico County. Said land was divided into lots and streets, and the plat was recorded in Plat Cabinet 1, Slide 2 at Page 19 of the Pamlico County Registry. The plat depicts South Avenue running in an east-west direction, intersecting Wall Street and Avenue A, and terminating at Raccoon Creek. Additionally, the map of the Town prepared in October 1939 depicts South Avenue running in an east-west direction, intersecting Wall Street and Avenue A, and terminating at Raccoon Creek.[3] It is uncontroverted that a portion of the property dedicated as South Avenue has been paved and is open to vehicular traffic.

The Henrys assert, and the trial court found and concluded, that from the time of the recording of the map from OBIC until the date of the hearing on Defendants' motion to dismiss, the Town of Oriental did nothing to indicate that it accepted *that portion* of South Avenue that is in contention in this matter. However, where a portion of a dedicated street is accepted, the unaccepted portion remains dedi-

---

3. Sherrill Styron, former Mayor of the Town, submitted an affidavit in which he states, "While serving as the Mayor of the Town of Oriental, I have also observed that all of the official maps of the Town . . . reflect that the west terminus of South Avenue runs to the water's edge . . . of Raccoon Creek."

cated to public use, though not kept in repair by the town, and "must at all times be free to be opened as occasion may require." *Home Real Estate Loan & Ins. Co.*, 216 N.C. at 788, 7 S.E.2d at 20. Furthermore, although the trial court found that the town leased portions of the South Avenue terminus, "[t]he fact that a municipality improves or directs improvement of [only part] of the property dedicated does not constitute an abandonment of the balance[.]" *Salisbury v. Barnhardt*, 249 N.C. 549, 555, 107 S.E.2d 297, 301 (1959) (quotation marks and citation omitted). Similarly, " 'the public use of only a part of land dedicated for a public highway does not constitute an abandonment of the unused portion.' " *Id.* (quotation marks and citation omitted).

At the hearing before the trial court, Defendants submitted six affidavits, five of which contain the following statement: "That I have never known or suspected that South Avenue extended to Raccoon Creek; I believed that South Avenue turned southward and became Avenue A because of its physical appearance." The trial court found that "[a]ll of the Affidavits submitted by the Defendants . . . indicate that the terminus point of South Avenue did not extend to Raccoon Creek, that it turns southward and becomes Avenue A, thereby bypassing the area in dispute in the lawsuit." However, these affidavits do not establish that the property dedicated as South Avenue did not extend to Raccoon Creek; these affidavits support only the uncontroverted fact that the portion of South Avenue that was *paved and opened for public use* intersects "Avenue A, thereby bypassing the area in dispute in the lawsuit." The *unpaved* portion of South Avenue continued to Raccoon Creek, as shown in the various surveys and maps of the Town beginning in July 1900, and as attested to in affidavits submitted by the Town at the summary judgment hearing.[4]

Accordingly, as part of South Avenue was paved and opened to public use, the remaining portion of South Avenue, including the South Avenue terminus, remained dedicated to public use.

The Henrys contend, however, and the trial court found, that the dedication of the South Avenue terminus was effectively withdrawn. We disagree. The South Avenue terminus was not subject to withdrawal from dedication since that property was but an unopened portion of South Avenue which was otherwise actually opened and

---

4. The Town submitted affidavits from John W. Bond and Fonnie E. Higgins wherein the affiants stated, "Everyone knew that the terminus of South Avenue was a public street and extended to Raccoon Creek."

used by the public. *Food Town Stores, Inc.*, 300 N.C. at 29, 265 S.E.2d at 129.

Even assuming, *arguendo*, that the South Avenue terminus *was* subject to withdrawal, "[w]e note, moreover, that land may not be withdrawn from dedication until the fee owners record in the register's office a declaration withdrawing such land from the use to which it has been dedicated." *Id.* (citing N.C. Gen. Stat. § 136-96). In this case, the evidence established that Wing conveyed the land at issue to Defendant Lacy Henry by quitclaim deed dated 28 March 1995.[5] Subsequently, on 21 July 1995, Wing filed a Declaration of Withdrawal regarding the subject property pursuant to N.C. Gen. Stat. § 136-96. However, as Wing was not the fee owner of the property on the date she filed the Dedication of Withdrawal, having already quitclaimed the property to Defendant Lacy Henry, Wing's withdrawal of dedication was not legally effective.

The trial court further found that Defendant Lacy Henry, upon receiving the quitclaim deed from Wing, "immediately erected a fence along the boundaries of the properties conveyed[,]" and concluded that Defendant Lacy Henry "has been in open, hostile[,] and notorious possession, under known and visible boundaries, of said property under color of title for at least eight (8) years." However, "a mere nonuse[] of a portion of a street fenced in with abutting property [is not] an abandonment of the street by the public. Some private use of the public way is not infrequently accorded abutting owners until the public use requires its surrender." *Salisbury*, 249 N.C. at 555, 107 S.E.2d at 301 (quotation marks and citation omitted). Furthermore, "the fencing in of a street or the planting of trees, shrubs, flowers and grass are not such permanent improvements as work an estoppel even though the city does not complain." *Id.* (quotation marks and citations omitted). Moreover,

[n]o person or corporation shall ever acquire any exclusive right to any part of a public road, street, lane, alley, square or public way of any kind by reason of any occupancy thereof or by encroaching upon or obstructing the same in any way, and in all actions, whether civil or criminal, against any person or corporation on account of an encroachment upon or obstruction or occu-

---

5. "A quitclaim deed conveys only the interest of the grantor, whatever it is, no more and no less." *Heath v. Turner*, 309 N.C. 483, 491, 308 S.E.2d 244, 248 (1983). If the grantor has complete ownership at the time of executing the deed, "the deed is sufficient to pass such ownership . . . ." *Black's Law Dictionary* 446 (8th Ed. 2004) (citation omitted).

pancy of any public way it shall not be competent for a court to hold that such action is barred by any statute of limitations.

N.C. Gen. Stat. § 1-45 (2007). Because we conclude for the foregoing reasons that the South Avenue terminus remained dedicated to public use, the Henrys were not permitted to acquire possession of the property by adverse possession.

Finally, the trial court found that the Henrys have paid taxes on the South Avenue terminus since 1989. However, "[t]he mere collection of taxes on dedicated property ordinarily will not estop a municipality from asserting the public character of the land dedicated[.]" *Lee v. Walker*, 234 N.C. 687, 696, 68 S.E.2d 664, 670 (1952).

Accordingly, as there were no genuine issues of material fact as to whether the Town was the owner of the South Avenue terminus, the Town was entitled to judgment as a matter of law. We hold that the trial court erred in granting summary judgment in favor of the Henrys and in failing to grant summary judgment in favor of the Town. We thus reverse and remand this matter to the Pamlico County Superior Court with instructions to enter an order consistent with this opinion.

REVERSED and REMANDED.

Judges STEELMAN and GEER concur.